(Ross County Common Pleas.)

THE CITY OF CHILLICOTHE, OHIO, by Wallace D. Yaple, its City Solicitor for and, on behalf of said City. v. THE LOGAN NATURAL GAS and FUEL COMPANY, a corporation.

---

(1). The requirement of sec. 1694, R. S., that municipal ordinances must be read on three different days before being put upon their passage, does not apply to amendments proposed and adopted during the consideration of such ordinances unless the subject or proposition of the ordinance is thereby wholly changed.

(2). The provision of the constitution requiring that in amending laws the new act shall contain the entire act or section amended, is directory merely, and not intended to abolish the doctrine of repeals by implication.

(3). Under the doctrine that statutes in pari materia have to be construed together and in harmony, secs. 2748 and 2749, R. S., will be construed together so that the amendment of sec. 2748, making that section applicable to natural as well as artificial gas, will apply also to sec. 2749 although the latter section was never amended to that effect.

(4). While sec. 2748, R. S., is a general grant of power to municipalities to regulate the price of gas, sec. 2719 is a limitation of that power. But the court is of opinion that if neither of these two sections had been amended, the use of the general term "gas" would have made them applicable to natural as well as artificial gas, although at the time they were passed the use of natural gas was unknown.

(5). While a provision in such an ordinance relating to the price of gas to be charged to the city for its own purposes, is in the nature of a contract, the city can not contract for its citizens, and a provision in the ordinance fixing the price of gas to be charged private consumers, is not a contract, but a legislative enactment.

(6). The provision of sec. 1691 that the council shall not enter into any contract which is not to go into full oper-

ation during the term for which all its members are elected, can not apply to the full performance of every part of such contracts, as otherwise all contracts, the full performance of which would require much time, such as conducting gas to a city and lay the gas pipes through its streets, would become void.

(7). Sec. 2479, R. S. limits the time for which council may fix the price of gas to ten years. An ordinance therefore, fixing the price for the period of ten years, but not to go into operation until six months after the date of its passage, is void as for a longer period than authorized by statute.

(8). Sec. 2485, R. S., which provides that every ordinance or contract by a municipality for the construction of gas works, must secure to council the right to purchase such works, applies to contracts with natural gas companies.

(9). Where the Gas Co. entered into contracts with private consumers for the price of the gas to be furnished, but the city council afterwards passed an ordinance fixing the price to be charged for gas at a lower rate, the Gas Co. can only collect the price as fixed by such ordinance.

(Affirmed by Circuit Court.)

HIDY, J.

Certain motions and demurrers to the pleadings were submitted by consent, of both parties to this action, which by agreement the court was permitted to hold under advisement, all rights of the parties being reserved.

Having considered the case upon the merits, under the pleadings as they stand, I prefer with consent of counsel to dispense with a consideration of the motions and demurrers, which can, if deemed necessary, be refiled in a court of review, and proceed at once to the merits of the case.

The action is brought by the city solicitor to compel the defendant, the Logan Natural Gas & Fuel Co., to furnish gas for fuel purposes, to the citizens of the city, at prices fixed by an ordinance of the city council passed September 18, 1900, and which took effect on October 1, 1900.

The defendant admits that it has refused to furnish gas, at the prices fixed by said ordinance, and had prior to the taking effect of said ordinance, made contracts with about ninety per-cent of its patrons in the city of Chillicothe, to furnish the gas for the year ensuing after October 1, 1900, at prices in excess of those fixed by said ordinance.

In justification of this course it pleads that, by an ordinance of said city passed on February 11, 1895, the minimum price at which it required the defendant company to furnish gas for a

period of ten years, was fixed at twenty-five cents per thousand feet; that the defendant company assented thereto, by written acceptance of the terms of said ordinance, filed in the office of the city clerk of said city as required by law, and that the said council thereafter had no power to require the defendant to furnish gas at a less price during said period.

That the prices fixed by the ordinance of September 18, 1900, are less than said minimum, and that the rates at which defendant is proposing to furnish gas are less than the minimum so fixed by said ordinance of February 11, 1895, though greater than prices fixed by the ordinance of September, 1900.

The rights of the parties depend almost wholly upon the proper construction and application of the provisions of chapter 3 of division 8, title 12 of the Revised Statutes of Ohio, entitled "Gas Companies."

The right of the city council to regulate the price of gas, to be supplied to the citizens of the city, by the defendant is claimed to exist by virtue of section 2478, Revised Statutes, being the first section of the chapter referred to.

The general power of city councils under said section to so regulate the price of gas is not denied by the defendant, but it is claimed on its behalf that the council of the city of Chillicothe, was on September 18, 1900, precluded from so doing by section 2479, Revised Statutes, the ordinance of February 11, 1895, and the acceptance of the same by the defendant.

The provisions of the two sections are:

"Section 2478—The council of any city or village in which electric lighting companies, natural or artificial gas companies, or gas light or coke companies may be established, or into which their wires, mains or pipes may be conducted, are hereby empowered to regulate, from time to time, the price which said electric lighting, natural or artificial gas or gas and coke companies, may charge for electric light or for gas for lighting or fuel purposes, furnished by said companies to citizens, public grounds and buildings, streets, lanes, alleys, avenues, wharves, and landing places; and such electric lighting, natural or artificial gas, or gaslight and coke companies shall, in no event, charge more for any electric light or natural or artificial gas furnished to such corporations or individuals than the price specified by ordinance of such council; and such council shall also have power to regulate and fix the price which such companies shall charge for rent of their meters."

"Section 2479—In case the council fixes the minimum price at which it requires any company to furnish gas to the citizens, or public buildings, or for

the purpose of lighting the streets, alleys, avenues, wharves, landing places, and public grounds, for a period not exceeding ten years, and the company assents thereto, by written acceptance, filed in the office of the clerk of the corporation, it shall not be lawful for the council to require such company to furnish gas at a less price during the period of time agreed on, not exceeding ten years, as aforesaid."

The ordinance of February 11, 1895, attempted in most explicit terms to fix the minimum price at which the council would require the defendant to furnish gas to the citizens of the city, for a period of ten years from the first day of the next ensuing September.

The provisions of said ordinance in that regard are found in section 2 thereof, and are as follows:

"Section 2—That said company, its successors or assigns shall for a period of ten years from the first day of September, 1895, be entitled to charge for such natural gas furnished to the citizens and public buildings in said city of Chillicothe, Ohio, not to exceed the sum of twenty-five cents per thousand cubic feet net to the consumers * * * and upon the filing of the written acceptance provided for hereinafter, the price aforesaid shall be deemed fixed for the period of ten years aforesaid between said city of Chillicothe, Ohio. and the Logan Natural Gas and Fuel Company of Logan, Ohio, its successors and assigns; and the said, the Logan Natural Gas and Fuel Company shall not, within the said period of ten years, charge the citizens of said city, who are consumers of natural gas, more than twenty-five cents (25) per thousand cubic feet, neither shall said city by ordinance or otherwise, require said company to furnish said natural gas lower than herein named."

I think the evidence of assent thereto by the defendant, is reasonably satisfactory, though perhaps a technical application of the rules of evidence might occasion the court some embarrassment on this point.

It is perfectly clear that if the council of the city had power, to pass the ordinance of February, 1895, fixing the price of gas for the period of ten years from the 1st day of the next ensuing September, and did legally pass it, the ordinance of September 18, 1900, to enforce which this action is brought, was passed without authority, and is void, and the defendant must prevail in this action.

It is contended for the plaintiff that the ordinance of 1895, (in so far at least as it attempts to fix the price of gas) is void. for the following reasons:

1st. The formalities required by statute for the passage of a valid ordinance were not observed.

2nd. The provisions of section 2479 do not extend to natural gas companies such as defendant.

3rd. The ordinance of February, 1895, is ultra vires and void for three reasons:

(a) As being in violation of section 1691, Revised Statutes.

(b) The ordinance attempts to fix the price of gas for a longer period than is authorized by section 2479, Revised Statutes.

(c) The ordinance does not secure to the city the right to purchase, and other rights enumerated in section 2485, Revised Statutes.

Of these in their order:

1st. Were the formalities required by statute for the passage of a valid ordinance observed in this case?

The only objection urged to the steps taken in its passage is that the ordinance, including the amendments, was not read on three different days before being put upon its passage, and this is supposed to be in conflict with the requirements of section 1694, Revised Statutes.

I do not think section 1694, Revised Statutes, requires that the amendments proposed and adopted during the consideration of the ordinance shall be read on three different days. Such has been the construction given to that section by at least two respectable courts. Mohn v. Collins. 32 Bull., 77-78; Weaver v. Mt. Vernon, 7 Nisi Prius 374.

Section 16, article 2 of our constitution contains an almost identical requirement as to the procedure by the state legislature in the course of legislation, and Judge Thurman in Miller v. The State, 3 Ohio St., 475, held that this provision of the constitution did not require the reading on three different days of the amendments to the bill, unless the "subject or propositon of the bill is thereby wholly changed", if then.

It is not pretended that this ordinance —aside from the amendments, was not read on three different days, nor does it appear that the "subject" or "proposition" of the ordinance was by the amendments wholly changed, and I have no difficulty in finding that all the formalities requried by section 1694, Revised Statutes, were observed in passing this ordinance.

The next question raised is:

2nd. Do the provisions of section 2479, Revised Statutes, extend to natural gas companies?

Counsel for plaintiff say not, and in support of their position recall the history of the legislation imbodied in sections 2478 and 2479, from which it appears that section 2478, in its original form, and section 2479 in its present form were both passed prior to the discovery of natural gas, or at least prior to its application to practical use as a fuel and

illuminant; from which it follows that the word "gas" employed in these sections meant, in the original enactment, artificial or manufactured gas, that being the only kind then commercially used or known. It further appears that both of these sections were re-enacted, in their original form, into the Revised Statutes in 1880 with their present sectional numbering. Natural gas had not yet in 1880 been practically applied to heating and illuminating purposes, and we must assume that the term "gas" still meant artificial or manufactured gas, as then employed.

Section 2478 has since been twice amended. In 1887 (84 O. L., 39), it was amended by prefixing to the word "gas" the qualifying words "natural or artificial" and in 1889 (86 O. L., 62) it was amended by adding "electric lighting companies" to those whose prices were subject to regulation by ordinance. So by section 2478, as it now stands, the council of a city is expressly authorized to regulate the price of natural as well as artificial gas. But section 2479 has never been amended in terms by any legislation since 1880. It stands today as it was enacted at the revision in that year.

Now it is urged by counsel for the plaintiff that if the word "gas" employed in that section meant artificial or manufactured gas when it was enacted, and there has been no amendment of the section since, it still means artificial or manufactured gas, and that section has no application to natural gas.

They aptly inquire—If section 2479 has been amended so as to change the meaning of the word "gas" employed in its original enactment, when and by what act of the legislature was it so amended? and they call attention to the fact that neither the amending act of 1887 nor of 1889 purport to amend or change section 2479, or repeal that section as originally enacted.

This inquiry is not without point, and it is rendered still more suggestive, when considered in connection with section 16, article 2 of our constitution which reads:

"Section 16—Every bill shall be fully and distinctly read on three different days, unless in case of urgency, three-fourths of the house in which it shall be pending shall dispense with this rule. No bill shall contain more than one subject, which shall be clearly expressed in its title; and no law shall be revived or amended unless the new act contain the entire act revived or the section or sections amended and the section or sections so amended shall be repealed."

The proposition seems plausible that inasmuch as no act since that of 1880 contains section 2479 in amended or any form, and since no act since 1880 repeals the section 2479 then enacted, any pretended amendment by implication would contravene this provision of the constitution.

But the provisions of this section of the constitution have been held to be directory and not intended to abolish the doctrine of repeals by implication.

Lehman v. McBride, 15 Ohio St., 573-605. Sutherland in his work on Statutory Construction, discussing this provision and similar provisions in the constitutions of other states, says:

"When, however, an act properly construed, amends certain sections, and the change so made, impliedly modifies certain other provisions to bring them into harmony, this effect does not require the sections thus modified to be included as changed in the amendatory act." Sutherland on Statutory Construction, section 135.

Applying this doctrine to the case at bar, it would appear that, notwithstanding the constitutional provision referred to, section 2479 might be modified by the amendment of section 2478 if that result was necessary to bring the two sections into harmony. In other words, the constitutional provision does not affect the rule for construing statutes in pari materia. That rule is, that statutes relating to the same subject shall be construed together and in harmony.

I think that there can be no doubt that these two sections stand in such relation to each other that they may be said to be in pari materia. They are successive sections of a chapter relating to the general subject of "gas companies", and all of the sections of this chapter may in a general sense be said to be in pari materia; but these two upon examination will be found to have a very close and intimate relation.

Section 2478 is a general grant of power to the councils of cities and villages, to regulate from time to time, the price which companies undertaking the service of supplying to the public gas or heat and light shall charge for the same.

Section 2479 is in form and substance a qualification, or limitation upon the grant of power made in section 2478.

So the power of council to regulate the price of gas is the subject of legislation in both.

There can be no question that at the original enactment of these sections, and their re-enactment in the revision of 1880—the grant contained in one section and the qualification in the other were by the legislature intended to be of equal scope in their application: That is to say, the qualification was intended to affect the entire grant; this must be so because the application of both was to artificial gas alone.

This legislative intent embodied in the two sections, prior to the amendment of 1887, being recognized; to hold that section 2479 does not apply to natural gas companies, since the amendment of 1887 made section 2478 expressly so to apply, would imply an entire change of legislative policy—the grant of power in the one section extending to subjects not included in the qualifications or limitations of the other.

I do not find either in the language of the amended section, or the nature of the new subject of regulation introduced by the amendment of 1887, sufficient evidence of, or reason for, such a change of legislative policy.

I think the legislature in the amendment of section 2478 must be held to have understood and recognized the relation in which that section stood to section 2479, and to have intended to preserve entire that relation, not to destroy it. In other words, that the legislature in 1887 amended section 2478, as one of two sections relating to the same subject, both of which were required to express the whole legislative intent; and solely for the purpose of enlarging the scope of application of an already fixed legislative policy: that policy being to grant to councils the power to regulate the price of gas, from time to time, with certain restrictions on the right to change the price during certain periods under certain conditions

I do not forget the consideration urged by counsel for plaintiff: That at the date of the amendment the application of natural gas to the uses of lighting and heating cities and villages was in an undeveloped and experimental stage: That its quantity and distribution had not then with any certainty been ascertained: That any man might reasonably, then, have expected to obtain a supply by sinking a hole to sufficient depth in his door yard: That therefore the reasonable price thereof for any considerable period in the future could not be anticipated, and the legislature having regard to these circumstances might well be thought not to have intended to allow councils to make contracts for a long period for a commodity whose future price was so uncertain.

If we are at liberty to appeal to such considerations in the interpretation of statutes I am inclined to think that the conditions mentioned might with equal reason have appealed to the legislature in favor of granting the power to council to fix the price for a definite period. The experimental stage of the industry, the uncertainty existing as to cost, supply and demand, were all calculated to deter capital and enterprise from embarking in the business, and might well

furnish a reason for encouraging enterprise by granting this power. At least I think they furnish no adequate reason why the legislature should not commit the matter to the discretion of the councils in various cities. Counsel for plaintiff in support of their contention that section 2479 does not apply to natural gas companies very ably argue the character of the power to regulate the price of public utilities, as being a governmental power, the surrender of which is never presumed: It is said that the legislature will not be presumed to have intended to grant the city and village councils the power to tie up the hands of future councils by making a contract with a natural gas company fixing the price of gas for a period of years; that the intention so to do must clearly appear from the statute granting the authority, and can not arise by construction.

The general principles of law contended for by counsel I think are fully settled, but in my judgment they fall into error in making their application to the present case.

They assume that section 2479 embodies a grant of power to city and village councils, and they then with perfect propriety insist that it shall clearly appear that the legislature intended to extend its operation to natural gas companies.

As I have already indicated I do not regard section 2479 as making a grant of power at all; but on the contrary as making a limitation or qualification upon a power already granted in section 2478. A scanning of the language of the two sections I think will show this to be their true character.

Section 2478 provides: "The council of any city or village * * * are hereby empowered to regulate from time to time the price which said * * companies may charge for gas for lighting or fuel purposes."

This is clearly a general grant of power to be exercised as often as in the discretion of council seems proper.

Section 2479 provides: "In case the council fixes the minimum price at which it requires any company to furnish gas to the citizens, etc., * * * for a period not exceeding ten years, and the company assents thereto * * * it shall not be lawful for the council to require such company to furnish gas at a less price during the period of time agreed on not exceeding ten years as aforesaid."

Now is not this simply to provide, that whereas by the former section council might in the exercise of the power to regulate—change the price of gas as often as in its discretion it saw fit (from time to time) yet, council having exercised it once, and fixed the price for a definite time, and the com-

pany having assented thereto, it may not again exercise it until that period has expired, and so is not this a simple limitation on the power granted in the former section as to the frequency of its exercise under certain conditions? It is not primarily a power to contract, but a limitation on the power to regulate.

Section 2478 does not require that the power to regulate therein granted shall in its exercise take the form of contract. The council may regulate without the assent of the company. Gas Light Company v. Zanesville, 47 Ohio St., 35.

And while section 2479 makes the assent of the company to the prices fixed one of the conditions which limit the council to a periodical exercise of its power, it does not follow that the contract relation necessarily arises upon the concurrence of action by council, and assent by the company; that a contract relation may arise upon such concurrence under this section I think there is no doubt, but whether it does arise probably depends on whether reciprocal duties and obligations are involved and the subject matter is one about which council has power to contract. That the contract relation may arise under such circumstances of course implies a power in council to contract, but it by no means follows, that the grant of power is in the same section.

Power to make contracts such as might arise out of the concurrent action of council and the company contemplated in section 2479 is granted in sections 2491, 2492, & 3551. It is there we must look for it, and further along will discuss its extent.

The relation between sections 2478 and 2479 is in no way different than if the latter section had simply provided that if council should by ordinance fix the price of gas for a definite period, it should not afterward change the price during that period, without making the assent of the company a condition affecting the result. That is precisely what is done in section 2651 (18), Revised Statutes, which authorizes council to regulate the price of heat and power, and limits the exercise of the power to intervals of five years each without any condition whatever.

That section and the two here involved all relating to the same subject—the regulation of the price of a public utility, they are in pari materia, and the latter section may be considered in construing the two former, and strongly supports the construction of section 2479 which I have adopted.

Now though this power to regulate the price of public utilities is a governmental power, the surrender of which is never to be presumed, it must be borne in mind that before we are called upon to consider whether a power has been surrendered, it must first be determined whether it was ever possessed.

This power does not reside primarily in city councils, but in the general legislative authority of the state; city councils can not acquire it by grant from the state legislature and can only exercise it to the extent that it is granted. It is perfectly competent for the legislature to grant only a limited power to council, and there is no presumption in favor of an unlimited grant. On the contrary the presumption is the other way, and by the very principles of law urged by counsel for plaintiff—that the power exercised is within the terms of the grant must clearly appear.

In such a case "to doubt is to be resolved" and as I do not think it clearly appears from the language of the two sections construed together, that the legislature intended to grant to city councils the power to regulate the price of natural gas, without limitation upon the frequency of its exercise, I conclude that they have no such power, and that section 2479 imposes the same limitations on the power to regulate the price of natural gas as of artificial gas. The conclusion thus reached does not require me to determine what would have been the situation if no amendment had been made to section 2478. I am strongly of opinion that if both sections had remained unchanged after the revision of 1880, the general term "gas" employed in both would by its own force have extended the application of the statute to all species of the genus which might afterward be discovered or applied to the use of lighting or heating. Whether such conclusion is precluded by the consideration that the legislature afterward thought it necessary, by amendment, to expressly extend the scope of section 2478 by including the species in the language employed I need not determine since I have already held that the amendment of the one section, by implication modified the other.

It is also urged by counsel for plaintiff that section 2651 (18) rather than section 2479 was intended to apply to natural gas, since gas of that kind is usually applied as a fuel to the production of heat.

Judge Bently in Toledo v. Gas Company, 5 C. C., 569, seems willing to concede that the "heat and power act" of 1880, of which this section is part, was broad enough to include natural gas employed for fuel purposes. However this may be, if both sections fairly construed might include in their scope natural gas, the rules of construction require us to give effect to both if possible and this could easily be done by assuming that the legislature by subsequent amendment of section 2478 in 1887

definitely bringing the regulation of the price of natural gas under that section, intended to withdraw it from the operation of the more general act of 1880; that act being still left to operate upon heat and power produced by other agencies.

Having reached the conclusion that the council had the power in February, 1895, to fix by ordinance the minimum price at which it would require the defendant to furnish gas to the consumers in the city for a period not exceeding ten years, and that upon the assent of the company to such prices it could not lawfully require the company to furnish gas for less during that period, we come now to the question whether the ordinance of February, 1895, was a lawful exercise of that power.

It is contended by counsel for plaintiff that said ordinance was ultra vires for three reasons all of which I will notice.

1st. It is said that the ordinance attempts to make a contract which was not to go into full operation during the term for which all the members of the council then acting were elected, in contravention of section 1691, Revised Statutes.

That section reads as follows: "Section 1691— The council shall not enter into any contract which is not to go into full operation during the term for which all the members of such council are elected."

Section 2 of said ordinance among other things provides: "That said company, its successors and assigns shall for a period of ten years from the first day of September, 1895, be entitled to charge for such natural gas furnished to the citizens and public buildings in said city of Chillicothe, Ohio, not to exceed the sum of twenty-five cents per thousand cubic feet net to the consumers."

The court will take judicial notice of the fact that a municipal election is held in April of each year in all the cities of the state at which a part of the members of council are elected, and that the term of office of retiring members ends at the next regular meeting of council thereafter.

If this provision of the ordinance amounts to a contract which was not to go into operation until the September following its adoption in February, it could not go into operation during the term for which all the members of that council were elected, and is subject to the objection urged against it. It is somewhat difficult to determine when a contract may be said to "go into full operation" within the meaning of section 1691.

Assuming that the provision of this ordinance relating to the price to be charged for gas, and the assent of the company thereto, raised a contract relation between the parties, it is manifest that it was not an independent contract in itself. It was merely one of the terms of a contract. The whole of the contract included the grant by the city to the company of the franchise to use and occupy the streets on the one part, and the undertaking of the company on the other part to furnish a supply of natural gas for the use of the city and its inhabitants. The section relating to the price of gas, if a contract at all, was merely a term or stipulation of this more general contract.

From the very nature of this contract all of its stipulations were not capable of immediate and simultaneous performance. One of its terms as we have seen was an undertaking on the part of the company to furnish a supply of gas to the city and its inhabitants. From the very nature of the undertaking this could not be done at once. Performance of this undertaking was necessarily deferred until the proper appliances for carrying the gas from its source of supply to the city, and through the streets to the points of consumption, could be constructed; and this we all know must require several months, and might require a year or more according to the particular circumstances of the case. To hold that performance of this stipulation of such a contract must begin within the term of office of all the members of council would be to defeat the purpose of the legislation granting power to municipal corporations to contract for a supply of gas for the purpose of lighting or heating the streets, squares, and other public places, and buildings in the corporation limits, because it would render every such contract void from the very circumstances attending its execution.

Section 1691 then can not mean that performance of every term or stipulation of the contract shall begin during the term of office of all members of council. The section fixing the price of gas, regarded as a contract, is of the same nature as the undertaking to furnish gas; indeed they are correlative terms of the contract, performance of which must be simultaneous; the price attaches to the gas when furnished, and not before. Without undertaking to determine, then, what the legislature meant by section 1691, I am satisfied that the ordinance of February, 1895, regarded as a contract, is not within the prohibition of that section.

But there is another course of reasoning which would lead to the same conclusion.

Is section 2 of the ordinance of 1895 any part of the contract? I think that it is more than doubtful: It will be seen that the section relates only to the price which may be charged for gas furnished

to consumers other than the city.

Section 7 relates to gas furnished the city, and makes it perfectly clear that by the former section the city was not contracting for a supply of gas for its own use. The question arises then, whether the council had any power to make a contract with the company as to the price of gas furnished to private consumers.

That it had power to legislate on the subject of prices of natural gas furnished to private consumers we have already held in discussing the construction to be given section 2478 and 2479.

But the power to legislate is one thing, and the power to contract is another. Vincennes v. Gas Light Co., 31 N. E., 577; Indianapolis v. Gas Co., 66 Ind., 396; Valparaiso v. Gardner, 97 Ind., 1.

The power to contract with gas companies is given and its scope defined in sections 2491, 2492 and 3551, Revised Statutes.

Section 2491 says: "A municipal corporation may contract with such company for supplying with electric light, natural or artificial gas for the purpose of lighting (or heating) the streets, squares, and other public places, and building in the corporation limits."

Section 2492 says: "The council of any city or village may provide for lighting the streets, alleys, public grounds and buildings, wharves, landing places, bridges, railways, and market places within the corporation."

Section 3551 says: "The municipal authority of any city or village or the trustees of any township in which any gas or water company is organized may contract with any such company for lighting or supplying with water the streets, lands, lanes, squares and public places in such city, village or township."

These sections so far as I have been able to ascertain by a pretty careful examination of the statutes furnish the only authority of council to contract with gas companies, and it will be observed that they relate exclusively to procuring a supply of gas for lighting (or heating) the streets, square and other public places and buildings of the city—in other words for gas to be consumed by the city itself and for which it will have to pay, and has no reference to gas consumed by private parties.

The only other section which could possibly be looked to as furnishing authority to council to contract with reference to the price of gas to be supplied to private consumers is section 2479 which I have already said, in my opinion, was not intended to grant a power to contract, but was a limitation on the power to regulate, which is a purely legislative power.

The stipulation of section 7 of this ordinance that the company shall during ten years furnish gas to the city for its own consumption free of charge is a part of the contract, for it is a subject within the scope of council's power to contract; so for the same reason any action council might take after the expiration of ten years fixing the price of gas consumed by the city for a further period if assented to by the company, might raise a contract relation; for though it took the form of a legislative enactment, it might well be treated as a proposition upon the part of the city to pay so much, which upon being accepted by the company would make a contract.

Reciprocal rights and duties arise—the duty of the company to furnish gas, and the duty of the city to pay for it at the stipulated price, and this is the contract relation. But the stipulation is different as to gas consumed by private parties; council can not stipulate for them that they will pay so much, or that they will take any of the gas: The price and quantity of gas to be consumed and paid for by any individual is manifestly a matter of independent negotiation between the individual and the company, subject only to the power of council in the performance of its legislative duty to regulate the charges to be made.

If the authority of council to contract does not extend to fixing the price of gas consumed by private individuals, then the provisions of section 2 of the ordinance is not part of the contract made between the city and the company. That section simply represents an exercise of the legislative power of council concurrently with, and in the same ordinance by which it made a contract with the company.

I know of no legal objection to council contracting and legislating in the same ordinance when the subject of the legislation and of the contract are so closely related as is the case here.

But it may be urged that it being within the power of council when this contract was made, to so exercise its legislative power to regulate the price of gas to private consumers as to preclude its again exercising the power within ten years, that the company stipulated for such a present exercise of its legislative power, as one of terms of the contract then made; and that the enactment of section 2 of the ordinance was a performance of the part of council of that stipulation.

That council might lawfully forbear to change the price of gas, during a period of ten years, therefore under the well known rule that "whatever a man may lawfully forbear that he may oblige himself against", it might bind itself by

contract to make no change during that period.

But this rule is limited in its application to cases where a third person is not wronged nor the public prejudiced by such obligation. The State v. Cin. Gas Light Co., 18 Ohio St., 292.

I think that it could not be said that a contract by one of the legislative agencies of the state not to exercise a purely legislative power during a period of years would not be to the public prejudice; and that a power of legislation held in trust by council for the benefit of the public can not be thrown in as make weight along with other considerations to sustain a contract.

I conclude that section 2 of the ordinance of 1895 was not a part of the contract, but was pure legislative action on the part of the council.

If it was not a contract, it was not within the prohibition of section 1691, which says: "The council shall not enter into any contract which is not to go into full operation during the term for which all the members of such council was elected."

2nd. It is next contended by council for plaintiff that section 2 of the ordinance of 1895, fixing the price of gas, was ultra vires because the period fixed was longer than ten years from the date of the ordinance, and was therefore in excess of the power conferred on council by section 2479, Revised Statutes.

Counsel for defendant in opposition to this contention cite the opinion of Judge Bently in Toledo v. Gas Co., 5 C. C., 558, and the case of the State v. Ironton Gas Co., 37 Ohio St., 45. They contend that the doctrine of these cases is that an agreement between a city and a gas company fixing the price of gas for a period beyond that authorized by law or for an indefinite time, is good and binding during the period for which it might lawfully have been made; and so this ordinance is good as a contract to furnish gas at a certain price for the period of ten years from the date of its passage, though it attempts to fix the price for a period extending ten years and six months from that date.

The Ironton case does not sustain that doctrine. The question is expressly and apparently of purpose left undecided in that case.

That was an agreement fixing the price for twenty years; in the opinion Judge White says: "The agreement was performed by the parties for the period of ten years, and no question is raised as to its validity for that term."

The case of Toledo v. The Gas Co. I think does sustain the position of coursel for the defendant. That being the opinion of a circuit court in another circuit I am not required to bow to its authority, but I cheerfully yield to it

the respect due to a court of superior jurisdiction to my own. I find myself however compelled to exercise my right to disagree.

If the question raised by such a situation is to be solved by an application of the doctrine of ultra vires to municipal contracts, I do not know where Judge Bently finds authority for his position. He cites no authority; counsel for defendant cites no authority except Judge Bently, and I have been unable to find any in the books.

The doctrine of ultra vires as applied to municipal corporations as I understand it, is, that contracts in excess of municipal authority are void; and I know no source from which the courts can derive authority to make for the parties the contract which they might legally have made but did not make.

I think the supreme court of the state in Gas. Co. v. Avondale, 43 Ohio St., 257, have held the contrary. In the opinion in that case Judge Follett says: "Section 2479 does not benefit the plaintiff as to price, for the contract was not limited to, or within ten years, but was to continue indefinitely at the option of the company, and it seems clear that if sections 2478 and 2485 apply to this case the contract was ultra vires". And again. "Hence we see that the council exceeded its powers in agreeing to grant to the company an exclusive privilege, and in agreeing to place beyond the control of the village the price and quality of gas as well as the quality the village would require in future, and the agreement is ultra vires and void."

It will be observed too that this was a case of contract; the controversy arising over the price and quantity of gas furnished to and consumed by the village itself.

I think this case conclusive of the rights of the parties here if they are to be determined on the basis of a contract relation.

A contract fixing the price of gas for ten years commencing in the future as clearly transcends the statutory limit as one fixing the price for fifteen years.

To hold otherwise would be to allow council to do indirectly what it is forbidden to do directly—for if it may make a contract for ten years commencing six months hence, it may make one commencing six years hence. But in the view I have heretofore developed of section 2478 and 2479 in their application to section 2 of the ordinance of 1895, this case scarcely calls for an application of the doctrine of ultra vires strictly so called.

If section 2479, Revised Statutes, is not a grant of power to fix the price of gas for a definite period, then section 2 of this ordinance could not be said to transcend the power granted by the

statute; and if section 2 is not part of the contract, there is no room for an application of the doctrine of ultra vires contracts. This will be found however to be only a shifting of the aspect of the matter, not a change of the substance.

Section 2478 contains a general grant of power to councils to regulate the price of gas, from time to time; that is, as often as council in its discretion deems necessary.

Section 2479 contains a limitation upon this power which precludes its exercise except at certain intervals, upon the concurrence of certain conditions.

The power granted in secion 2478 is a governmental power beneficial to the public which council can only be precluded from exercising by a strict concurrence of all the conditions.

One of the conditions of this limitation is that council shall pass an ordinance fixing the price of gas for a period not exceeding ten years.

Section 2 of the ordinance of 1895 does not furnish this condition, it attempts to fix a price for a period exceeding ten years.

We have not here, therefore, the conditions which limit the council to a periodical exercise of its power, and council might again on September 18, 1900, legislate on the same subject, and the ordinance of that date is not void for want of power in the council.

3rd. It is further claimed for the plaintiff that the ordinance of February, 1895, is void because it does not secure to the city the rights provided for in section 2485, Revised Statutes.

The part of that section claimed to apply reads as follows: "Section 2485—It shall not be lawful for any council to agree by ordinance, contract or otherwise with any person or persons for the construction or extension of gas works for manufacturing or supplying the corporation or its inhabitants with gas * * * which shall not specify the exact quality of gas to be furnished and reserve to the council the right to enforce an exact compliance with such specifications under such rules as the council may prescribe, nor shall the council make any such agreement which shall not secure to the council the right to purchase such works and all the appliances belonging thereto at any time within the existence of such contract or agreement."

This contract does not specify the exact quality of gas to be furnished, nor does it secure to the council the right to purchase the works, and it is claimed that it is void by the provisions of section 2485 for that reason. But counsel for defendant say that this section has no application to natural gas or natural gas companies.

I think the same rule adopted in construing section 2478 and 2479 so as to

bring natural gas companies within the purview of the latter section must be adopted here.

All the sections of this chapter are in pari materia and must be construed together and in harmony: This does not imply that every particular provision of every section is intended to apply to every kind of gas company or every kind of gas. But considering the whole scope of the legislation in this chapter, such construction will be given to its particular provisions as best harmonizes with its general purpose.

Now I am not able to say that there is anything in the character of natural gas which would preclude the application to it of tests as to quality. I do not understand that natural gas is all of the same quality, either as an illuminant or a fuel; nor do I know any reason why its quality may not be varied by appliances such as are adopted in the manufacture of what is known as water gas. However this may be, if this part of section 2485 did not apply to natural gas the last provision of the section still might.

Is there any reason in the nature of the thing why an agreement for the construction or extension of natural gas works in a city should not secure to the council the right of purchase as fully as if it was an artificial gas works? A city has just as much authority to own, one as the other.

But it is said that the term "works" employed in the section excludes its application to natural gas except in such a case as that of the city of Findlay here the whole plant is within the city—but that where the appliances employed consist only of pipes, mains, etc., they could not properly be called "gas-works."

The same objection would apply to the case of a contract for supplying artificial gas where the machinery for its manufacture was situated wholly without the city, and the contract only contemplated the extension of pipes from a plant already in operation to another city or village. A sufficient answer is found in the fact that the supreme court has taken a different view of the matter.

Judge Follett in Gas Works v. Avondale, 43 Ohio St., 268, says: "If gasworks used only for manufacturing gas do not include the mains and pipes that convey the gas to the lamp-posts and to the consumers (as perhaps they may not) gas-works for supplying gas" at the lamp-posts in the village" do include the mains and pipes through which the gas is furnished by a company that owns the whole plant including the rights of way where the same are laid as in this case"; and the court held in that case that a contract with the Cincinnati Gas Co. to supply gas

to the village of Avondale was ultra vires, and for the reason among others that it attempted to grant an exclusive privilege in violation of this same section 2485.

This is a contract for supplying gas to consumers in the city of Chillicothe, and the gas-works in such a case according to Judge Follett, including. the pipes and mains through which the gas is furnished.

Nor do I think the reasoning of Judge Seney in Gas-works v. Lima, 4 C. C., 22, is sound. I think the judge entirely overlooks the distinction between a power to purchase and a right to purchase. A municipal corporation acquires powers by grant from the state legislature—it may acquire rights by contract, and if power and right mean the same thing I fail to see any necessity for requiring that municipal corporations should by contract secure to itself powers which are secured to it by legislative enactment.

I would therefore be inclined to hold that section 2485, at least in its last provision, applies to contracts with natural gas companies.

But as I have already held that section 2 of the ordinance of 1895 did not preclude the council from passing the ordinance of September, 1900, I prefer to rest this decision upon that ground rather than upon the ground that the contract is void because in violation of section 2485. My reason for so doing is that to hold the latter proposition would be to destroy all the reciprocal rights of the parties arising under that contract.

The defendant is in enjoyment of a franchise derived under this contract, and the city is content that it may enjoy it provided its mode of enjoyment is not inconsistent with the right of the city to make and enforce reasonable regulations.

There is no purpose to be served, then, by destroying the company's title to its franchise if the rights of the city can otherwise be secured.

Holding as I do, that section 2 of the ordinance of 1895 was legislative action and not part of the contract then made between the city and the company; that as legislation it does not furnish the conditions necessary under section 2479, Revised Statutes, to preclude council from a subsequent exercise of power to regulate, and that the ordinance of September 18, 1900, is valid and binding on the company, the right of the city is thus secured and all the contract relations between the parties left undisturbed.

I therefore do not decide the question raised as to the validity of the contract of 1895.

The city solicitor brings this action in the name of the city under authority of section 1777, Revised Statutes.

It is insisted by the defendant that the action can not be maintained under that section.

They say that an action can only be mantained under that section when a contract relation exists between the city and the company which the action is intended to enforce.

That the plaintiff takes the position that the contract of 1895 is void; and therefore it can not be relied upon to furnish the contract relation which alone can be the predicate for such an action.

That the ordinance of 1900 has never been accepted by the company, and no contract relation can be predicated on it, and that therefore the case presented lacks this requisit to sustain an action by the solicitor in the name of the city under section 1777.

So much of that section as is necessary to be considered reads as follows:

"Section 1777—He shall apply in the name of the corporation to a court of competent jurisdiction, etc.,   *   *   * and he shall likewise whenever an obligation or contract made on behalf of the corporation granting a right or easement, or creating a public duty is being evaded or violated apply for the forfeiture or the specific performance of the same as the nature of the case may require."

If the decision of this case required a finding that the contract of 1895 was void and the judgment was placed on that ground, then the court would be required to consider whether authority to bring the action necessarily presupposed a contractual relation between the city and the company, or whether a company in actual enjoyment of a franchise, though enjoyed without a grant, might not be held to be under an obligation to conform to the reasonable regulations prescribed by council in its legislative capacity, independent of contract.

But we are under no such necessity in this case. The contract of 1895 is not void, all the contract relations created by the ordinance of 1895 are left undisturbed.

The company holds its franchise in the streets of the city by grant made in that ordinance—that is by contract, the grant "creates a public duty", and if the acts pleaded and proven show a violation or evasion of the contract or the public duties it creates, a case is made within section 1777. R. R. Co. v. Smith, 29 Ohio St., 291.

It will hardly be denied that the grant of the franchise to the company devolves upon it an obligation to furnish gas to the public generally at such prices as the council might by a lawful exercise of its legislative authority fix.

The proofs here show a violation of this obligation by the company.

Counsel are mistaken in the statement that in the case of Gas Co. v. Zanesville, 47 Ohio St., 35—the suit was brought to enforce a contract to furnish gas to the city. It is true that the suit was brought to enforce a right of the city to have gas for its own consumption at prices fixed by ordinance—but the ordinance in that case had never been assented to by the company; there, as here, it expressly denied the validity of the ordinance. If any contract was violated or evaded, it was the contract granting the franchise and the obligations it devolved upon the company.

I therefore conclude that this action can be maintained as brought by the solicitor in the name of the city.

As to the claim made in the answer, that the prices fixed in the ordinance of September, 1900, are unreasonable, it is sufficient to say that no evidence was offered tending to show their unreasonable character. If it is claimed that the price will not yield a reasonable return for the money invested, no basis is furnished upon which the court could determine whether this is so; the amount of money invested is not stated. It is stated that the company has never paid a dividend, but is may nevertheless have paid a great many debts, and made large additions to its plant out of its earnings. It is easy to estimate that its income from the fifteen cities within its field of operation must be largely in excess of a quarter of a million dollars, annually, and no amount of expense incident to the conduct of the business has been shown, or suggested, which would reduce the net annual income below what would be a reasonable return for a very large investment.

It is suggested that the method of fixing the price "viz", by the flat or mixer rate adopted in the ordinance, is in itself unreasonable.

This suggestion will scarcely be regarded as serious when advanced by a company which for five years past has of choice, adopted that method in fixing its prices to consumers, and which has already made two thousand contracts with customers in this city for the current year in which prices are fixed by this method.

This brings us to the rights of the company against consumers who had signed contracts at the advanced prices before bringing this action. The right of the company before the ordinance of September 18, 1900, to fix its own prices for gas is beyond question, for there was no legal ordinance in force regulating the price; but that right was subject to the right of council to exercise its authority to regulate, at any time, and the company could not by anticipating such action of council, make contracts which would defeat the end to be attained by such legislation. If the company may forestall legislation for one year by contracts with its consumers, it may do so for ten years or forever.

I hold therefore that on these contracts for gas to be consumed after October 1, 1900, the company can only collect the rate fixed by the ordinance of September 18th.

A decree for the plaintiff may be entered in accordance with the findings herein made.

Wallace D. Yaple, City Solciitor; Seymour Cunningham, and John P. Phillips, for Plaintiff.

John G. Reeves, M. A. Dougherty, John C. Eutrekin and John W. Goldsberry, for Defendant.