Zimmerman, J.
 

 In this action the relators are asking this court to make an order requiring the respondent to issue them new certificates of title to certain real estate, the title to which had theretofore been registered under the Torrens Act and which real estate had become forfeited to the state for the nonpayment of taxes, purchased by the relators at tax sale and for which they had received tax deeds from the auditor of Lorain county.
 

 The first contention of the relators is that Section 5762, General Code, effective August 11,1943, repealed by implication Section 8572-58, General Code, a part of the so-called Torrens Act; and that under the language and on the basis of Section 5762, the writ should issue.
 

 Section 5762, General Code, after providing that upon the sale of lands forfeited for the nonpayment of taxes, the county auditor shall execute and deliver a deed therefor to the purchaser upon payment of the fee specified, recites, “which deed shall be
 
 prima facie
 
 evidence of title in the purchaser * # *. When a tract of land has been duly forfeited to the state and sold agreeably to the provisions of this chapter, the con
 
 *450
 
 veyance # * * shall extinguish all previous title thereto and invest the purchaser with a new and perfect title, free from all liéns and encumbrances, except such easements and covenants running with the land as were created prior to the times the taxes or assessments, for the nonpayment of which the land was forfeited became due and payable. ’ ’
 

 Section 8572-58, General Code, provides in effect that there shall be no registration of title to theretofore registered land procured under a tax deed, unless such deed is filed in the county recorder’s office within a certain time and' unless there is compliance with the prescribed court procedure requiring that all interested persons shall be made parties and brought into court and requiring the applicant for registration, upon certain contingencies, to establish his right thereto by evidence.
 

 “Mandamus,” is defined in Section 12283, General Code, as “a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.”
 

 In the case of
 
 State, ex rel. Moyer,
 
 v.
 
 Baldwin,
 
 77 Ohio St., 532, 539, 83 N. E., 907, 908, 19 L. R. A. (N. S.), 49, 54, 12 Am.
 
 &
 
 Eng. Ann. Cas., 10, it was stated in the opinion:
 

 “The statutory definition [of mandamus] does not define the act as one enjoined by statute but as one enjoined by law * * * the act which the writ directs to be performed, is one that the courts determine it is the duty of the respondent to do because it appertains to his office, trust, or station; and it is specially enjoined by law when it is so determined. The purpose in defining mandamus was not to limit the jurisdiction, but merely to describe the writ # *
 

 Assuming, under the above statement, that relat
 
 *451
 
 ors would be entitled to the writ prayed for in the event Section 5762, General Code, operated to repeal Section 8572-58, General Code, it must first be determined whether a repeal was intended and occurred.
 

 The rule is too well established to require discussion that the repeal of statutes by implication is not favored in law; and the presumption is always against the intention to repeal an existing statute where express terms indicating that intention are not employed. 37 Ohio Jurisprudence, 405, Section 143.
 

 Moreover, an enlarged meaning beyond the import of the words actually used will not be given to an act in order to repeal another by implication. 37 Ohio Jurisprudence, 404, Section 141.
 

 Pursuant to the authorization contained in Section 40, Article II of the Constitution of Ohio, Section 8572-1
 
 et. seq.,
 
 General Code, were enacted in 1913 covering in detail the registration of land titles. Where registration of the title to lands under the act is effected, the subsequent status and treatment of such lands becomes entirely different from that accorded unregistered lands, and such was the purpose and intent of the legislation.
 

 This court said in the opinion in the case of
 
 Groene
 
 v.
 
 Boyle, County Treas.,
 
 141 Ohio St., 553, 554, 49 N. E. (2d), 564, 565, that:
 

 “* * * the purpose of the Torrens Act is to secure by decree of court a title to land impregnable against attack, to make a permanent and complete record of the exact status of the title, with all liens, encumbrances and claims against it, and to protect the registered owner against all claims or demands not noted on the book for the registration of titles.”
 

 In 5 Tiffany on Real'Property (3 Ed.), 109, Section 1314, it is stated:
 

 “The system of registration of titles, frequently called the ‘Torrens System,’ has for its purpose the
 
 *452
 
 establishment of a method by which the title to a particular piece of land will be always ascertainable by reference to a register maintained by a government official, made by law conclusive in this regard.”
 

 And it is remarked in 8 Thompson on Real Property (Perm. Ed.), 258, Section 4415, as follows:
 

 “The objects of the [Torrens] system are as follows : First, the creation of an indefeasible title in the registered owner; second, simplification in the transfer -of land; third, certainty and facility in the proof of title by reference to a certificate issued by a government official made conclusive by law; and fourth, the saving to the community of the cost of a new examination of title in connection with each transfer or transaction affecting the land.”
 

 The Torrens Act speaks plainly on the subject of tax deeds.
 

 Section 8572-6, General Code, provides:
 

 “No title derived through or under any tax sale or tax deed shall be entitled to be first registered unless it shall be made to appear that title under said tax sale or tax deed has been duly established and confirmed, or acquired, by a valid judgment or decree of a court of competent jurisdiction or that the applicant and those through and under whom he claims title have been in the actual, undisputed and adverse possession of the land under such title for at least twenty-one years and have paid all taxes and assessments legally levied thereon for at least- ten successive years next preceding the filing of the application. ’ ’
 

 And then Section 8572-58, General Code, specifically covers the registration of title to lands theretofore registered, which have been purchased at a tax sale, and expressly prescribes the steps necessary to obtain registration of the title to the lands so purchased.
 

 Whether the Torrenization of the title to land is desirable is a disputed matter, but once Torrenization
 
 *453
 
 occurs, the applicable statutes are controlling and may not be ignored.
 

 Except as provided in Section 8572-64a, General Code, no land once brought under and made subject to the act pertaining to the registration of land titles shall ever be withdrawn therefrom. See Section 8572-86, General Code.
 

 The chapter of the Code entitled “Begistration of Land Titles” is complete and self-contained and, so long as it remains a part of the statutory law of this state, must be recognized.
 

 Now, Section 5762, General Code, as effective August 11, 1943, was placed in the chapter headed “Forfeited Lands.” Of course, it definitely applies to unregistered lands but makes no reference to registered lands, as could have been done, and until the General Assembly sees fit to express itself clearly on the subject by appropriate legislation, we are unwilling to hold that Section 8572-58, General Code, has been repealed by implication.
 

 If what relators are now asking should be ordered, the result would be disruption of the Torrens Act and the orderly processes thereunder, and the relators would be getting in effect a new certificate of title under the act without regard for or in compliance with its terms.
 

 We cannot agree with relators in their first contention.
 

 Belators next insist that if Section 8752-58, General Code, has not been repealed by implication, the law which should be followed in this case was established by the judgment or decree of the Court of Common Pleas of Lorain county in the proceeding referred to in the statement of the case, which proceeding was instigated by the respondent in the instant case and wherein it is claimed the owners or lienholders of the Torrenized lands in Lorain county were virtually represent
 
 *454
 
 ed; and that in accordance with such judgment of the Court of Common Pleas this court should now order the respondent to comply with the demands of the relators.
 

 Examining.the proceedings in the Court of Common Pleas, which were made a part of the petition in this case with the attachment as exhibits of copies of the papers filed, we find that the respondent herein, purportedly acting under the provisions of Section 8572-40, General Code, a part of the Torrens Act, made application to the Court of Common Pleas asking that court for a declaration on the following questions:
 

 “1. Is Section 8572-58, General Code (103 Ohio Laws, 914) [943], Section 58), enacted in 1913, applicable to forfeited lands duly sold by a county auditor under the provisions of H. B. No. 260, effective August 11, 1943?
 

 “2.
 
 If the above.answer is ‘no,’ does this petitioner have authority to issue a new certificate of registered title to the purchaser at a forfeited land sale of a lot or parcel of forfeited registered land upon the presentation of auditor’s deed thereto and the proper fees ? ’ ’
 

 As has been indicated, the court answered the first question in the negative and the second in the affirmative.
 

 The pertinent part of Section 8572-40, General Code, reads:
 

 “If the recorder is in doubt upon any question, or if any person in interest does not agree as to the proper memorandum to be made in pursuance of any deed, mortgage or other voluntary instrument presented for registration, the question may on the certificate of the recorder stating the question upon which he is in doubt, or the person in interest does not agree, be referred to the Common Pleas Court for decision; and the court, after notice to all parties and a hearing, shall enter an order directing the action of and pre
 
 *455
 
 scribing the form of memorandum to -be made by the recorder, who shall make registration or otherwise act, in accordance therewith, and such order shall be final and conclusive * *
 

 In our opinion the section just quoted was not designed or intended to provide a means for the determination of questions such as were propounded to the Court of Common Pleas. Other sections of the same act point out in detail the exact procedure to be followed in relation to the registration of title to real estate secured by a tax deed. Here, in effect the Court of Common Pleas was being asked to make use of one section of the act in a way which might lead to the nullification of another section thereof.
 

 Nor do we think that the proceeding in the Court of Common Pleas can be classed as an action for a declaratory judgment, because the elements of a genuine controversy involving justiciable rights between adverse parties were lacking.
 

 In the situation presented, the recorder propounded certain questions for the court’s advice and opinion, without taking a position one way or the other. The answer and cross-petition merely asked the court to answer those questions in the way the cross-petitioner wished them to be answered. Thus, no controversial issue was raised between the recorder and the cross-petitioner.
 

 It has been said that a declaratory judgment is a binding adjudication of the
 
 contested rights of litigants,
 
 though unaccompanied by consequential relief, whereas an advisory opinion is merely the opinion of a judge or judges of a court, which adjudicates nothing and is binding on no one.
 

 Under all the circumstances, we think that the denominated judgment of the Court of "Common Pleas amounted to no more than an advisory opinion by the judge of that court, not provided for under our laws,
 
 *456
 
 which was without binding force or effect and had no official standing.
 

 Moreover, in a mandamus action like the present one, wherein an order is asked directing the respondent to perform an act specially enjoined by law, this court would hardly be governed by a judgment of the Court of Common Pleas in another case to which the relators herein were not parties and where in the view of this court that judgment was invalid.
 

 Therefore, relators’ second contention is likewise rejected.
 

 In conclusion, if the situation as it now exists with reference to registered lands sold at tax sales creates vexatious problems about which something should be done, the General Assembly is the agency to remedy the matter by specific legislation.
 

 It follows that respondent’s demurrer to the petition is sustained and the petition dismissed.
 

 Demurrer sustained and petition dismissed.
 

 Bell, Williams, Matthias and Hajrt, JJ., concur.
 

 Turner, J., not participating.