Sohngen, J.
 

 The principal question presented by this action concerns the .status of' the relator during the period from July 1, 1945, when he returned from the army and commenced to perform and thereafter continued to perform and discharge the duties of the office of judge of the Court of Common Pleas, to September 1, 1946, the approximate date of his appointment to the office by the then Governor of Ohio. Respondent contends that, under the terms of Section 14 of Article IV of the Constitution of Ohio, the relator, upon his acceptance of a commission from the United States Government as an officer in the Army of the United States* forfeited and vacated bis office as judge of the Common Pleas Court and was not entitled to the salary paid to him by the state from July 1, 1945, when he returned, to the date of his appointment by the Governor.
 

 Section 14, Article IV, Constitution of Ohio, provides :
 

 “The judges of the Supreme Court, and of the. Court of Common Pleas, shall, at stated times, receive, for .their services, such compensation as may be pro
 
 *707
 
 vided by law, which shall not be diminished, or increased, during their term of office;
 
 but they shall receive no fees or perquisites, nor hold any other office of profit or trust, under the authority of this state, or the United States.
 
 All votes for either of them, for any elective office, except a judicial office, under the authority of this state, given by the General Assembly, or the people, shall be void.” (Italics ours.)
 

 Was the’relator a
 
 de jure
 
 or a
 
 de facto
 
 officer, or was? he a mere volunteer?
 

 A
 
 de jure
 
 officer is one who occupies his office through, a proper and legal election or appointment and during a constituted term.
 

 The relator was in the year 1942 elected to the office of judge of the Court of Common Pleas of Belmont county for a term of six years commencing on the first day of January 1943 and ending on the 31st day of December 1948, and entered upon the duties of the office on January 1, 1943. He received his commission in the Army of the United States and commenced service therein on the first day of May 1943.
 

 The section of the Constitution of Ohio here under consideration does not provide that a person holding the office of judge of the Court of Common Pleas shall be ineligible to hold another office. To the contrary it provides: .
 

 “The judges * # * of the Court of Common Pleas * * * shall receive no fees or perquisites,
 
 nor hold any other office of profit or trust,
 
 under the authority of this state, or the United States. * * *” (Italics ours.)
 

 Did the relator forfeit his office as judge by the acceptance of a commission in the Army of the United States and service therein during World'War II?
 

 The principle is firmly established that the acceptance by an officer of a second office which is incompatible with the one already held is a vacation of the original office and amounts to an implied resigna
 
 *708
 
 tion or abandonment of the same. Annotation, 100 A, L. B., 1162, and the authorities there reviewed.
 

 The relator could not under our Constitution have been an officer in the Army of the United States and a judge in the state of Ohio at the same time, and when he accepted a commission in the Army of the United States, he impliedly resigned from his office as judge of the Common Pleas Court and thus abandoned it. . When he returned from the army and purportedly re-assumed his seat on the bench, relator could not have done so under his prior election, and so was not a
 
 de jure
 
 officer.
 

 If the relator was not acting as a
 
 de jure
 
 officer, was he a
 
 de facto
 
 officer?
 

 A
 
 de facto
 
 officer may be defined as one who, although not an officer in point of law, has the reputation of being the officer he assumes to be and is accepted as such by those who deal with him.
 
 Calley
 
 v.
 
 Blake,
 
 126 W. Va., 696, 29 S. E. (2d), 634.
 

 The following comprehensive definition of a
 
 de facto
 
 officer is found in
 
 Stale
 
 v.
 
 Carroll,
 
 38 Conn., 449, 471, 9 Am. Rep., 409:
 

 “A
 
 definition sufficiently accurate and comprehensive to cover the whole ground must, I think, be substantially as follows: An officer
 
 de facto
 
 is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised,
 

 “First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.
 

 “Second, under color of a known and valid appointment or election, but where the officer had failed to con
 
 *709
 
 form to some precedent requirement or condition, as to take an oath, give a bond, or the like.-
 

 “Third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public.
 

 “Fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such. ’ ’
 

 The above definition divides
 
 de facto
 
 officers into four classes. In three of these classes the officer holds his office under color of right. In the fourth class, which is perhaps not as well known as the others, the officer holds his office without protest, not under an invalid election or appointment, but under some other claim of right, and has been recognized and dealt with by the public as such officer. In such situation, his reputation as such officer and the acquiescence of the public take the place of or, furnish the color of right.
 
 State, ex rel. City of Republic,
 
 v.
 
 Smith, State Aud.,
 
 345 Mo., 1158, 139 S. W. (2d), 929.
 

 In 43« American Jurisprudence, 232, Section 478, it is stated:
 

 “One who has the 'reputation of being the officer he assumes to be, although he is not such in point of law, if he is in possession of the office and claims- to be entitled to perform its duties, is generally considered as being an officer
 
 de facto.
 
 The reputation of a person being a public officer and the acquiescence by the public in his official standing may be traced to a known but defective election or appointment, as in the case of a color of title acquired in this manner. . But, it seems, reputation and general recognition may be based on the mere performance of the duties of the office for a sufficient length of time to imply that there must have
 
 *710
 
 been an appointment or election although it is only-presumed and the occasion is unkown. In other words,, a person may, irrespective of any question of appointment or election, become an officer
 
 de facto
 
 where he has acted under such circumstances of reputation or acquiescence as are calculated to induce people, without inquiry, to submit to or invoke his action in the supposition that he is in truth the officer, he assumes tobe.”
 

 Thus, where an officer holds the office and performs the duties thereof with the acquiescence of the public-authorities and the public and has the reputation of being the officer he assumes to be and is dealt with as such, he is, in the eyes of the law, a
 
 de facto
 
 officer.
 

 Clearly, the relator, under the above definition, was a
 
 de facto
 
 officer. He performed the duties of judge and was accepted as such by the community during the period after his return from the army and until his appointment by the Governor. The citizens of Belmont county appeared before him in good faith, presuming he was the officer he assumed to be, and he decided cases and made orders affecting their interests. The respondent himself during this period recognized the relator as such judge and acquiesced in his ■ holding the office by paying him the salary due the office. In the opinion of this court, the relator was a
 
 de facto
 
 judge from the time he assumed his'duties after resigning his commission in the army until the date bf his appointment by the Governor.
 

 Does the state have the authority to recover the salary paid to relator during his service as a
 
 de facto
 
 judge?
 

 It is a well established rule that, in the absence of statutory permission, salary which has been paid a
 
 de facto
 
 officer cannot be recovered by public authorities, where such officer, acting in good faith, actually rendered the services for which he was paid. 32 Ohio-
 
 *711
 
 Jurisprudence, 1093, Section 238; 43 American Jurisprudence, 239, Section 491; annotations, 93 A. L. R., 273, and 151 A. L. R., 960.
 

 There is no doubt that relator in good faith rendered the services for which he was paid. The state, therefore, cannot recover the salary paid to him during this period, and the respondent is without authority to retain the salary which has accrued to the relator since Ms appointment and qualification as judge.
 

 Writ allowed.
 

 Weygandt, C. J., Turner, Matthias, Hart, Zimmerman and Stewart, JJ., concur.