Korn, Appellant, *v.* Dunahue, Appellant; et al., Appellees.

48.

(No. 3076—Decided May 12, 1967.)

*Messrs. Froug & Froug*, for appellants.
Mr. *William D. Forbes*, city solicitor, *Messrs. Peck, Shaffer & Williams* and Mr. *Andrew J. Conroy*, for appellee city of Miamisburg.
Mr. *Julian de bruyn Kops*, Mr. *J. R. Newlin* and Mr. *William E. Herron*, for appellee The Dayton Power & Light Company.
*Messrs. Pickrel, Shaeffer & Ebeling* and Mr. *Gordon H. Savage*, for appellees Thomas D. Robinson and Robert Bell.

CRAWFORD, P. J. Appellants, Robert L. Korn, plaintiff, and George C. Dunahue, defendant, as citizens, residents and taxpayers of the city of Miamisburg and users and consumers of electricity from the municipal electric generating and distributing system, have appealed on questions of law and fact from a judgment in the Court of Common Pleas denying them injunctive relief against the proposed sale of the system to defendant-appellee The Dayton Power & Light Company and declining to render a declaratory judgment supporting their contentions.

They now seek in this court temporary and permanent orders restraining the defendants-appellees city of Miamisburg; its officers and agents, from giving up, and defendant-appellee The Dayton Power & Light Company from taking possession of, the property owned by the city of Miamisburg and used in its electric generating plant and distribution system, and for a judgment finding invalid Ordinance

No. 1380 enacted on July 6, 1965, and Resolution No. 1019 enacted on January 29, 1966, directed toward such transfer and sale, and the agreement between the city and such corporation pursuant to such legislation.

On August 19, 1958, the municipal council passed Ordinance No. 1026 approving the report of a consulting engineering firm placing a value of $5,800,000 on the municipal electric generating and distributing system, and declaring that such facility shall not be sold for less than that amount, which shall be effective until a revised value shall be fixed upon a similar professional evaluation.

On July 6, 1965, council passed Ordinance No. 1380: (1) declaring that the property of the electric system, therein described, is not needed for municipal purposes; (2) authorizing and directing the safety-service director to advertise for sale and to sell the system for not less than $4,695,350 to the highest and best bidder, under certain terms and conditions, such as: that no bid less than $4,695,350 shall be considered, that each bid shall state the ability of the bidder to provide electric service to the city and its inhabitants at rates to be specified, that to each bid shall be attached a copy of a proposed franchise which shall be granted to the successful bidder, that each bid shall contain a statement of bidder's intention as to the employment status of the city's electric utility system employees, that the city shall discharge a certain indenture of mortgage upon the property used in operation of the system, that each bid shall specify a time for removal of equipment and for certain rentals, that the city reserve the right to reject any and all bids, that a referendum petition be presented to the city auditor and placed on the ballot in November, that council and the board of control negotiate a contract with the help, if necessary, of an evaluation by a consulting firm; (3) declaring that the safety-service director shall enter into the necessary contract with the successful bidder and convey the system to such bidder; and (4) declaring that the ordinance shall take effect at the earliest possible time.

The only bid received by the appointed time, January

7, 1966, was that of the defendant-appellee The Dayton Power & Light Company, in the sum of $5,156,560, which was accepted by the board of control on January 29, 1966. On that date council passed Resolution No. 1019 ratifying and approving this actoin of the board of control and entering into an agreement for the sale to the defendant-appellee The Dayton Power & Light Company.

That resolution made reference to Ordinance No. 1380 and stated that a referendum petition was filed placing the approval of Ordinance No. 1380 before the electors of the ctiy, a majority of whom approved the same at the general election on November 2, 1965. It also declared:

"Whereas, the Safety-Service Director did, in pursuance of the terms and conditions of said Ordinance No. 1380, advertise in The Miamisburg News, a newspaper of general circulation in said city on November 25th, and on December 2, 9, 16 and 23, 1965, that bids would be received until twelve o'clock noon, January 7, 1965, for sale of the city's electric utility system, and

"Whereas, The Dayton Power and Light Company, an Ohio corporaton, with offices at Dayton, Ohio, submitted a bid for the purchase of said city's electric utility system in accordance with the legal advertisement and in accordance with said Ordinance No. 1380 in the amount of $5,-156,560 which was the highest and best bid so submitted and which was accepted by the Board of Control and the Safety-Service Director in accordance with the provisions of said Ordinance No. 1380; * * *"

The resolution was declared to be an emergency and immediately effective.

Appellants begin their argument with the question, "What is the reason for selling the electric system?"

This is a legislative, not a judicial, question. It was obviously long and vigorously debated, and the sale was ultimately decided upon by the board of control, by the city council, and by the people of the city of Miamisburg.

Appellants' initial question is followed with the argument:

"The electric system was and is needed for municipal purposes, and the authorizing the sale under Ordinance

No. 1380 is in violation of Section 721.01, Ohio Revised Code."

This argument renews the debate as to the wisdom and desirability of selling the plant. Appellants, assuming the correctness of their view that the plant should not be sold, proceed to the conclusion that it is needed for a municipal purpose.

Section 721.01, Revised Code, relates to the sale of municipal property, and provides:

"Municipal corporations have special power to sell or lease real estate or to sell personal property belonging to the municipal corporation, when such real estate or personal property is not needed for any municipal purpose. Such power shall be exercised in the manner provided by Sections 721.01 to 721.26, inclusive, of the Revised Code."

This provision must be considered in the light of Section 3, Article XVIII of the Constitution, which provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." (Adopted September 3, 1912.)

Surely these broad powers of self-government include the power and authority to decide whether to acquire, own and operate, or to discontinue operation of a public utility. So long as the municipality operates a public utility, the physical property employed to that end is needed for that municipal purpose; but if the municipality decides otherwise, then the property is no longer needed for any municipal purpose.

Hence, we must reject as invalid the argument of appellants that the only time a public utility may be sold by a municipality is when the system has become obsolete, or inadequate, or when it is operating at a loss, or when a tremendous capital expenditure is required to put it in good condition.

"A municipality has the right to sell its municipal lighting plant * * *." 19 Ohio Jurisprudence 2d 252, Electricity, Section 28.

Cited to that text are the cases of *Stone, ex rel. Man-*

*chester,* v. *Osborn,* 24 Ohio App 251; and *Lakewood* v. *Cleveland Electric Illuminating Co.,* 21 N. P. (N. S.) 289, 29 O. D. (N. P.) 355. See, also, *Geiger* v. *Kobie* (1951), 60 Ohio Law Abs. 555.

In the *Stone case* (24 Ohio App. 251) the court said, at page 256:

"Now, with the question whether from a business standpoint the scheme was wise or unwise this court has nothing to do. The rule is that the court will not substitute its judgment for that of the board or officer performing administrative functions upon any question such board or officer is authorized by law to determine, except for an abuse of discretion or for fraud or collusion on the part of such board or officer. * * *"

The case of *Babin* v. *Ashland* (1953), 160 Ohio St. 328, held:

"6. The power to convey property owned by a municipal corporation and no longer needed by it for municipal purposes is included within the powers of local self-government conferred by Article XVIII of the Ohio Constitution * * *."

On page 348 in the opinion, the court said:

"* * * it is only necessary to determine that the legislative body of the city did not clearly abuse its discretion in determining that the city did not need 'for any municipal purpose' that portion of the 'public ground' which it proposes to sell. * * *"

In *State, ex rel. McClure,* v. *Hagerman* (1951), 155 Ohio St. 320, the court observed, on page 324:

"The problem of deciding what constitutes public purpose has always been difficult of solution. Texts and digests are quite uniform in their treatment of the subject."

And, on page 325, it is said:

" 'The determination of what constitutes a public purpose is primarily a legislative function, subject to review by the courts when abused, and the determination of the legislative body of that matter should not be reversed except in instances where such determination is palpable [*sic*] and manifestly arbitrary and incorrect.' 37 American Jurisprudence, 734, 735, Section 120."

The question whether to continue the public operation of this utility has intelligent and, no doubt, sincere advocates on both sides; both present what appear to be plausible arguments. The court is not the arbiter of this issue. We find in the case none of those causes for our intervention listed in the authorities above. Hence, there is no justification for interfering with the decision which the board of control, the city council, and the electorate have reached.

It is contended that the price bid by The Dayton Power & Light Company is inadequate. The court cannot decree what the exact price should be. We can only decide whether, by accepting the price bid, the board of control and the council abused their discretion—whether such a disparity exists between the reasonable value of the system and the proposed sale price as to render the amount of the bid grossly inadequate. In the absence of such a situation the courts will not interfere. See *Kerlin Brothers Co.* v. *Toledo* (1900), 20 C. C. 603; *Lake Hiawatha Park Assn.* v. *Knox County Agricultural Society* (1927), 28 Ohio App. 289; *Judy* v. *Louderman* (1891), 48 Ohio St. 562; 11 Ohio Jurisprudence 2d 326, Contracts, Section 90.

The testimony of those who purport to express informed expert opinions is neither precise nor uniform. Such a question necessarily involves intangibles, uncertainties, and a measure of conjecture.

The physical property is only one of the elements to be considered. Its present depreciated value is variously estimated at 2.2 to 2.6 million dollars, and substantial sums are mentioned as necessary to put it in first-class condition. Replacement value for new equipment would, the evidence indicates, be considerably higher, perhaps as much as 4.7 or 4.8 million dollars. There is always the question of its actual worth to any bidder who already has its own generating plant, because of what was called "duplication of facilities."

There are anticipated increases in population, in industry, and in demand for electrical energy, probable annexation to the city of additional territory to be served, increased efficiency affecting costs, sales, profits, etc.

Perhaps the two expert witnesses on value most often quoted in the briefs are Alden E. Stilson, engineering consultant, called for appellees, who had made a detailed study of the subject for the city of Miamisburg, and Mr. John P. Gallagher, also a consulting engineer, called for the appellants.

Stilson placed a minimum "buy-sell" value upon the utility as a going concern in 1965 of $5,200,000; he said that a bid of 99 per cent of an engineering estimate is considered a good bid, and that The Dayton Power & Light Company's present bid of $5,156,560, being 99.2 per cent of his estimate, is a good bid.

Asked his opinion as to the probable value of the system ten years hence, in 1975, he gave the figure of $8,500,000, and estimated needed expenditures of $1,615,000 for repairs and improvements.

Gallagher said that the 1965 value to the city of Miamisburg is $7,033,440, and that a twenty-five year franchise would be worth 20 percent additional, making a total of approximately $8,440,000.

He concedes the difficulty of placing specific values on items other than physical property, stating that "in my opinion these items are intangibles which have to be considered on the basis of judgment and discretion."

Considering all this testimony, along with that of others, we cannot say that the proposed sale price of $5,156,560 is grossly inadequate.

Appellants contend that Ordinance No. 1380 violates Section 731.19, Revised Code, by containing more than one subject. The statutory provision involved is the first sentence of that section, which reads:

"No ordinance, resolution, or bylaw shall contain more than one subject, which shall be clearly expressed in its title."

Careful reading of Ordinance No. 1380 discloses no violation of that provision. The title declares it to be an ordinance "authorizing and directing the safety-service director * * * to advertise for sale and to sell for not less

than $4,695,350 the electric system * * * to the highest and best bidder * * *.''

The text of the ordinance contains four sections: Section 1 describes the physical property to be sold; Section 2 authorizes the safety-service director "to advertise for sale the property described in Section 1 above, according to law, and to sell said property to the highest and best bidder under the following terms and condition" (then follow ten specifications, such as those mentioned above); Section 3 authorizes the execution of a contract and such instruments and documents as are necessary to convey title to the purchaser; and Section 4 provides that the ordinance shall be effective at the earliest possible time.

The following comment of the court in *Stone, ex rel. Manchester,* v. *Osborn* (1927), 24 Ohio App. 251, at page 254, is peculiarly applicable:

"It seems to us clear that the ordinance in hand does not deal with more than one measure or more than one general object, and that general object is to unload the municipal electric light plant of Manchester upon some purchaser who will be compelled to operate it. Now, in order to accomplish such object it became necessary, it seems, in the view of council, to sell the personal property to such purchaser, to lease the real estate to him, and to grant him a franchise to operate the municipal plant. These three things were necessary to carry out the one measure or object. There is here no violation of Section 4226." (Section 731.19, Revised Code.)

See, also, *Heffner* v. *Toledo* (1907), 75 Ohio St. 413.

Counsel refers to some of the conditions of the bids specified in Section 2 of the ordinance as pertaining to a different subject. These provide, for example, as already indicated, that each bid shall contain a statement of fact relative to the ability of the bidder to provide electric service and the rates to be charged, that the city shall grant a franchise to the successful bidder, and that to each bid shall be attached a proposed franchise, etc.

Subsequent ordinances were passed with respect to

these several subjects, but their mention as conditions of the sale does not incorporate additional subjects into Ordinance No. 1380, which provides for the one fundamental purpose of advertising and selling the electrical facility.

Appellants challenge the validity of the referendum election of November 2, 1965, at which a majority of the electors of the city of Miamisburg approved Ordinance No. 1380. The argument is two-fold: (1) That the ordinance was not properly submitted to the people by action of council or the clerk; and (2) that the facts were misrepresented, especially by the defendant-appellee The Dayton Power & Light Company, and the proposal was not adequately described on the ballot.

The first contention is that the city officials did not do the things required of them by the Constitution, Sections 4, 5 and 8 of Article XVIII. It is our opinion that Judge Martin in the Court of Common Pleas correctly stated that:

"* * * the sale by municipal corporation of its generating and transmitting facility is not governed by the provisions of Sections 5 and 6 of Article XVIII of the referendum provisions, as such sections are concerned only with the purchase of or the right to construct a public utility."

He cited the case of *Geiger* v. *Kobie* (1951), 60 Ohio Law Abs. 555. In that case, Judge Skeel, speaking for the court, said:

"* * * These provisions of the Constitution deal with a subject wholly different than is presented by this appeal. We here have for consideration the question of the validity of an initiated ordinance authorizing the *sale* of municipally owned property used in furnishing electrical energy to the citizens of a municipal corporation." (Emphasis added.)

Hence, this referendum was not provided by Sections 4, 5 and 8 of Article XVIII of the Constitution, but by Section 1f, Article II, and by Section 731.29, Revised Code,

which require no action of council. Inasmuch as the referendum was in fact held, it must be assumed that the city clerk or auditor performed his duty by certifying the referendum petition to the board of elections.

The referendum, although not requisite to the validity of Ordinance No. 1380, was itself regular and effective.

The second argument is a collateral attack upon the validity of the election. A timely contest of an election is provided by statute. Section 3515.08, Revised Code. It has been held that this provision is exclusive and that a collateral attack will not lie. *State, ex rel Shriver,* v. *Hayes* (1947), 148 Ohio St. 681; *State, ex rel. Commissioners,* v. *Brown* (1957), 167 Ohio St. 71.

Our conclusion upon this issue as to the validity of the referendum election is that no referendum is requisite to the validity of the ordinance, and that the referendum election which was held was valid and cannot be collaterally attacked in this action.

Appellants claim that inasmuch as the personnel of the city council changed at the beginning of 1966, Ordinance No. 1380, which had been adopted prior to that time, expired, and that any action taken in pursuance thereof is unlawful and void.

Of course, a council cannot bind its successor.

"The legislative authority of a municipal corporation shall not enter into any contract which is not to go into full operation during the term for which all the members of such legislative authority are elected." Section 731.48, Revised Code.

This does not mean that a succeeding council may not, if it sees fit, carry out the terms of an ordinance adopted by its predecessor, such as Ordinance No. 1380 in this case, by entering into the contemplated contract with The Dayton Power & Light Company. This it did by adoption of Resolution No. 1019 on January 29, 1966.

It is interesting to note at this point the contention of appellants that because the city council at a former time adopted Ordinance No. 1026 providing that the electric

system should not be sold for less than $5,800,000, it could never thereafter be sold for a lesser amount; that, therefore, Ordinance No. 1380 could not reduce the minimum amount to $4,695,350, and subsequent Resolution No. 1019 adopted by council on January 29, 1966, could not reduce the price to the amount of the bid obtained from defendant-appellee The Dayton Power & Light Company of $5,156,560.

We believe that the invalidity of the present argument is as apparent as its inconsistency with the valid argument that one council cannot bind its successor.

The Court of Common Pleas held, we believe correctly, that Ordinance No. 1380, passed on July 6, 1965, repealed by implication Ordinance No. 1026.

We note in the original petition in that court an allegation that on July 20, 1965, council passed, plaintiff claimed irregularly, Ordinance No. 1381, expressly repealing Ordinance No. 1026, but purporting to do nothing further. We find scarcely any other reference to Ordinance No. 1381; but this circumstance is probably of little significance, in the light of the validity of Ordinance No. 1380 and the referendum thereon.

Appellants object that the service-safety director, acting upon instructions of council, did not advertise for bids as widely as he should in order to encourage competitive bidding. He complied strictly with the statutory requirements. Sections 721.03 and 721.15, Revised Code. He did more than that by communicating with other electric public-utilities companies in the general area, informing them of the proposed sale.

We find no merit in this contention.

The objection that there was no competitive bidding in the true sense because of supposed negotiations between the council and The Dayton Power & Light Company is not well taken. There was but one bid received. The arrangement of details does not render this a negotiated contract rather than one entered into by competitive bidding.

The argument is made that the proposed sale has not been approved by a three-member board of control.

Section 733.22, Revised Code, requires that contracts in excess of $500 shall not be awarded except upon approval of the board of control; a board of three members is not specified. Section 733.21, Revised Code, provides that the board of control shall consist of the mayor, the director of public service, and the director of public safety. However, Section 733.03, Revised Code, provides that the legislative authority of any city may, by majority vote, merge the office of director of public safety with that of director of public service, with one director to be appointed for the merged department.

It would be an odd situation if such merger were held to render the board impotent to give the required approval.

It is contended that Resolution No. 1019 was improperly adopted as an emergency measure. Section III thereof provides:

"That this resolution is hereby declared to be an emergency measure made necessary to preserve the full faith and credit of the city of Miamisburg, Ohio, for the reason that time is of the essence in completing details of sale and arranging for an orderly transfer of the city's electric utility system to the successful bidder and this resolution shall be in force and take effect immediately upon passage and signature by the Mayor."

We do not find that this issue was raised until the filing of the amended petition in this court on June 22, 1966. Therefore, the language contained in the case of *State, ex rel. Hile,* v. *Cleveland* (1927), 26 Ohio App. 265, at page 269, is significant here:

"The ordinance in question was passed as an emergency ordinance in the manner required by the charter of the city, and its emergency character was therein declared and set forth by the council. The record does not disclose any challenge thereof by any proceeding to institute a referendum or otherwise, until the bringing of this suit, which was subsequent to the time allowed for instituting a referendum. In consequence thereof, as was determined in *Vansuch* v. *State, ex rel. Fetch,* 112 Ohio St. 688, 148 N. E. 232, 'such ordinance must now be considered effective

immediately upon its passage, and the question of its emergency character, determined by the council, will not be inquired into.' ''

We find that the resolution complies with Section 731.30, Revised Code, and that it was properly passed as an emergency measure.

The contract is not ultra vires, as claimed, because entered into while this suit was pending. The consummation of the transaction is being deferred pending the outcome of this litigation. Both the city and The Dayton Power & Light Company are parties to this suit and are bound by the outcome. Meanwhile, this court has jurisdiction to preserve the status quo so as to render its ultimate judgment effective. No order has been issued restraining preliminary steps, and these are not ultra vires or void; their effectiveness will be determined by the judgment in this case.

It is our conclusion that appellants have failed to establish their claim for relief.

Judgment will be entered for defendants-appellees.

*Judgment accordingly.*

KERNS and SHERER, JJ., concur.

ON MOTION for new trial.

*Per curiam.* This case is again before us, this time upon appellants' motion to vacate judgment and for a new trial. Additional counsel for appellants having entered the case, we have been importuned to hear further oral arguments. Appellants' brief so clearly sets forth their contentions that we do not believe further oral argument is required.

We have heretofore carefully considered and decided the points raised in the memorandum upon the present motion. We find no cause to depart from our previous decision.

There is one subject, however, upon which perhaps we should endeavor to be more articulate. This concerns the

question of when, under what circumstances, and by what procedures the several ordinances involved are subject to referendum.

Ordinance No. 1380 was the first, basic and comprehensive ordinance, and provided for the one general object of selling the municipal electric system to a purchaser who would operate it. This ordinance for the *sale* of the utility is not covered by Sections 4, 5 and 8 of Article XVIII of the Constitution; hence, the procedural steps for referendum therein provided do not apply. The provisions for referendum applicable to Ordinance No. 1380 are contained in Section 1f of Article II and Section 731.29 *et seq.*, Revised Code. Such a referendum was held and the ordinance was approved by a majority of the electorate.

Ordinance No. 1380, having one principal object, is not violative of Section 731.19, Revised Code, which restricts an ordinance to one subject. *Stone, ex rel. Manchester,* v. *Osborn* (1927), 24 Ohio App. 251; *Heffner* v. *Toledo* (1907), 75 Ohio St. 413.

In the present case, the later ordinances Nos. 1418, 1419 and 1425, passed pursuant to Ordinance No. 1380, granted a utility franchise and fixed rates, thus simply carrying out the details already authorized in Ordinance No. 1380.

These last three ordinances, if they stood alone without relation to prior Ordinance No. 1380, would be properly classified as proceedings to contract with others for the product or service of a utility, as described and referred to in Sections 4 and 5 of Article XVIII and would, therefore, be governed by the method of referendum provided therein, namely, that set forth in Section 8 to which Section 5 refers.

In such a case, only the first of these ordinances would be subject to referendum. *State, ex rel. Didelius,* v. *City Commission of Sandusky* (1936), 131 Ohio St. 356. This is for the reason, as the court said on page 363 in the opinion in that case (which concerned an ordinance to construct or purchase a utility):

"* * * Where an ordinance has been passed providing

for the acquirement or construction of a public utility and the method of payment therefor, if the contention of counsel for the relator should be upheld, later ordinance contracts adopted for the construction of the utility could be thwarted by referenda on the ordinance contracts. * * *''

The same reasoning applies equally in the present case, even though the first ordinance No. 1380 was subject to a different referendum procedure.

Perhaps a valid parallel may be drawn with the provisions of Section 2501.02, Revised Code, that the type of appeal available in any case depends upon the ''primary and paramount relief'' sought. The primary and paramount purpose of the entire legislation by the council in the present case was as stated above and in the *Manchester case.*

We believe that our original opinion, together with the separate conclusions of fact and of law, effectively disposes of all the material issues in the case.

The motion for new trial will be overruled.

*Motion overruled.*

CRAWFORD, P. J., KERNS and SHERER, JJ., concur.