VILLAGE OF MOSCOW *v.* MOSCOW
VILLAGE COUNCIL ET AL.

(No. 84-CV-0004 — Decided
January 17, 1984.)

Court of Common Pleas of
Clermont County.

*Charles J. Tekulve,* for plaintiff.
*Thomas Blust,* for defendants.

RINGLAND, J.  Plaintiff, the village of Moscow, by and through its alleged solicitor, filed its complaint for declaratory judgment and injunctive relief on January 4, 1984. On January 5, 1984, defendants filed their motion for expedited hearing and their motion to dissolve temporary restraining order; the TRO had been issued on January 4, 1984.

The facts of the case which have been stipulated to or of which there is no dispute, are as follows:

On December 23, 1983, Ordinance No. 17-83 "Appointing Village Solicitor and Establishing Salary and Expenses" was enacted as an emergency ordinance "for the preservation of the public health and welfare of [the] Village," which ordinance purported to employ Charles J. Tekulve as solicitor of the village for the calendar years 1984-1985. The ordinance was signed by then-councilmembers M. June Foster, Louise Longworth, Larry L. West and Richard M. O'Neill. The remaining existing councilmembers Geoffrey S. Masterson and Linda DeWar did not sign, nor did the village clerk, Theresa Prebble, or village mayor, Eugene S. Holland. Also, on December 23, 1983, Ordinance No. 18-83 "Appointing Village Tax Commissioners and Establishing Salary and Expenses" was enacted as an emergency ordinance which purported to employ Charles J. Tekulve as tax commissioner of the village for the calendar years of 1984-1985. This ordinance was signed by the four aforementioned persons, then councilmembers, and was not signed by the village clerk or village mayor or the other two aforementioned councilmembers. Neither ordinance was certified as to the availability of funds per R.C. 5705.41 nor apparently authenticated per R.C. 731.20. There is no indication to the contrary, however, that R.C. 731.21, 731.25 or 731.46 was in any way not followed.

Pursuant to Ordinances Nos. 17-83 and 18-83, the then-Council of the village of Moscow, on December 30, 1983, drew up two employment contracts, one for the village solicitor, the other for the village tax commissioner, which contracts were signed by the four then-councilmembers mentioned above and by Charles J. Tekulve. The contracts were not signed by the village mayor or clerk or by the two other aforemen-tioned councilmembers. The total minimum amount to be paid to Tekulve under the contracts for the 1984-1985 period is $30,870. Undisputed evidence indicates that the prior solicitor and tax commissioner have not been retained by way of written contract with the village.

The mayor, Eugene S. Holland, gave notice of meetings of the Moscow Village Council to be held on January 2 and 3, 1984, at 7:00 p.m., the purposes being to read for adoption Ordinances Nos. 1-84 and 2-84 (rescinding Ordinances Nos. 17-83 and 18-83), and Ordinances Nos. 3-84 and 4-84 (appointing solicitor and tax commissioner and establishing salary and expenses). By virtue of a temporary restraining order filed January 4, 1984, defendants, Geoffrey Masterson, Linda DeWar, Laurence Hayward and Marilyn Hayward, as councilmembers, were restrained from undertaking any formal action on behalf of the village of Moscow to expend village funds or to enter into a contract to expend village funds for the hiring of a solicitor and/or tax commissioner or any person other than Charles J. Tekulve until such time as the court determined the validity of Ordinances Nos. 17-83 and 18-83 and contracts hiring Tekulve, drawn pursuant to these ordinances. At the regularly scheduled monthly village meeting on January 4, 1984, defendants did not vote to enact Ordinances Nos. 1-84, 2-84, 3-84 and 4-84. The request for temporary restraining order and complaint were based upon allegations of Charles J. Tekulve that he was the duly appointed solicitor and had not only the right but duty in the name of the municipal corporation of Moscow to request a temporary restraining order and injunction under R.C. 733.56.

Plaintiff's complaint has requested the following relief:

"1. That the court issue a declaratory judgment determining the validity of the contracts drawn between the then-village council and Charles J.

Tekulve, pursuant to Ordinances Nos. 17-83 and 18-83.

"2. That the court issue a declaratory judgment determining the validity of the Ordinances Nos. 1-84, 2-84, 3-84 and 4-84.

"3. That the court order defendants, mayor and village clerk, to sign the contracts drawn pursuant to Ordinances Nos. 17-83 and 18-83.

"4. That the court issue preliminary and permanent injunctions pursuant to R.C. 733.56 to enjoin defendants, Geoffrey Masterson, Linda DeWar, Lawrence Hayward and Marilyn Hayward from undertaking to expend funds pursuant to Ordinances Nos. 1-84, 2-84, 3-84 and 4-84 because this would be otherwise a misapplication of funds, abuse of corporate power, and execution of contracts made in contravention of law or procured through fraud."

The defendants' motion to dissolve temporary restraining order came on for expedited hearing on January 7, 1984. At the outset of this discussion, the court notes that the question of whether to dissolve the TRO necessarily entailed addressing the merits of the cause itself, inasmuch as the issues and arguments surrounding the dissolution question were substantially similar to, and indeed overlap with, the arguments regarding the merits of the declaratory judgment action brought by plaintiffs. Evidence was presented, stipulations were entered into and, based upon the hearing, the court clarified the temporary restraining order to limit its scope and ordered that the temporary restraining order be made a preliminary injunction advising all parties that it was not nor is not the intention of this court to interfere with the legislative function of the Moscow Village Council. The court then advised that it would receive additional written argument or memoranda as to the issuance of the declaratory judgment and determination of plaintiff's complaint. Since all facts were agreed to or stipulated, no additional evidentiary hearing was necessary, with the provision, should the parties or court in their research or determination discover a disputed material fact which would be determinative of the issues, that additional evidence could be taken by this court. The court has received both memoranda and has reviewed the statutes and cases cited therein.

There appears to be no dispute of material fact and therefore further hearing is not necessary as will be more fully set forth below.

R.C. 733.56 reads as follows:

"The village solicitor or city director of law shall apply, in the name of the municipal corporation, to a court of competent jurisdiction for an order of injunction to restrain the misapplication of funds of the municipal corporation, the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the municipal corporation in contravention of the laws or ordinance[s] governing it, or which was procured by fraud or corruption."

Both parties apparently concur that this statute empowers a solicitor to seek enjoinment of specific acts of his village council, if the actions of council can be construed as one of the four above-prohibited acts. The only other person with power to request an injunction is a village taxpayer, under R.C. 733.59. Tekulve concedes that he is not a resident of the village of Moscow. Thus, if Tekulve has standing, i.e., if he is the village solicitor, either by law (de jure) or de facto, then the court must determine if the actions of council sought to be enjoined are of the type enumerated in R.C. 733.56.

However, to get to that point, the court must first determine the validity of the ordinances and/or contract appointing Tekulve as village solicitor. The similar issue of the validity of the ordinance and/or contract appointing Tekulve as tax commissioner has by con-

sent of both parties been placed before this court to determine contemporaneously with the issue of village solicitor. To determine if the contracts appointing Tekulve solicitor and tax commissioner are valid, the court must first consider whether or not there has been a violation of R.C. 731.48, which states:

"The legislative authority of a municipal corporation shall not enter into any contract which is not to go into full operation during the term for which all the members of such legislative authority are elected."

Any municipal council, therefore, may not bind its successor in violation of R.C. 731.48. *Korn* v. *Dunahue* (1967), 13 Ohio App. 2d 46, 42 O.O.2d 112, 233 N.E. 2d 600. However, R.C. 731.48 does not mean that the performance of every term and condition shall begin during such period. A contract goes into "full operation" within the meaning of the section upon its execution. *Jones* v. *Middletown* (C.P. 1948), 59 Ohio Law Abs. 329, 96 N.E. 2d 799. This court must respectively disagree with defendants' contention that the holding of *Jones* was miscited by secondary text or that its author, the late Judge Krammer from the Butler County Court of Common Pleas, had no basis for making that specific holding. Prior authorities have held, if not explicitly, implicitly, the same principle of law albeit under different fact patterns or discussing the predecessor of R.C. 731.48, R.S. 1691.[1] See 1928 Ohio Atty. Gen. Ops. No. 1896, at 752; *Chillicothe* v. *Logan Natural Gas & Fuel Co.* (C.P. 1900), 8 Ohio N.P. 88, affirmed (Cir. Ct. 1900), 45 W.L.B. 11, reversed on other grounds (1901), 65 Ohio St. 186, 62 N.E. 122. To hold that "full operation" means when each and every term of the contract is performed, would make long-term contracts, or at least contracts covering a period longer than the present legislative body, void. Surely that is not the rationale of the legislature and the holdings of *Chillicothe* and *Jones* make sense. On the other hand, certainly to hold that a contract would go into "full operation" prior to its execution where a written contract is either required or anticipated would be folly. Until the written contract is signed, no party, especially an agency of the taxpayers, should be bound. The determination that the time of execution is the time of full operation is at worst a happy medium between the two extremes and at best a definite point in time which criteria can be set forth and a determination made by council, contracting parties, and if necessary, the courts in what is meant by "full operation." Therefore, this court adopts and reaffirms the execution of contract test in determining "full operation" under R.C. 731.48.

The next issue then becomes to determine when the contract was executed. For a contract to be formed or executed it must be done so in a manner provided and authorized by law. *Kraus* v. *Halle Bros. Co.* (C.P. 1950), 60 Ohio Law Abs. 418, 45 O.O. 115, 100 N.E. 2d 103. Contracts or obligations of a municipality shall be made and entered into by municipalities in the manner in which the statutes provide; they cannot be entered into otherwise than as provided by statute. *Bd. of Hamilton Cty. Commrs.* v. *Norwood* (C.P. 1942), 22 O.O. 400, 8 Ohio Supp. 111, citing *Wellston* v. *Morgan* (1901), 65 Ohio St. 219, 62 N.E. 127.

For the execution of a municipal contract to properly take place, the formality of certification of the availability of funds by a responsible fiscal officer must be followed, per R.C. 5705.41(D).

---

[1] R.S. 1691 provided: "The council shall not enter into any contract which is not to go into full operation during the term for which all the members of such council are elected."

Such statutory requirement is generally regarded as mandatory in compliance therewith as a condition precedent to making an agreement binding on the municipality. *Ludwig Hommel & Co.* v. *Woodsfield* (1927), 115 Ohio St. 675, 155 N.E. 386, followed in later opinion in same case (1929), 122 Ohio St. 148, 171 N.E. 23. Under the doctrine of *ultra vires* as applied to the acts of corporations generally, any attempted exercise of power to contract by a municipality which transcends the limits expressed or necessarily implied from the language of the instrument by which its powers are conferred is null and void. *Markley* v. *Mineral City* (1898), 58 Ohio St. 430, 51 N.E. 28; *Wellston* v. *Morgan, supra.* The requirement of certification for the payment of persons hired as municipal solicitor has been specifically passed upon, *Easton* v. *Hyde Park* (C.P. 1899), 6 Ohio N.P. 257 (construing R.S. 2702 which was substantially similar to its successor, R.C. 5705.41).

There are certain recognized exceptions to the requirement of fiscal certification that evolved through Ohio case law. A certificate is not required if expenditures are to be made from other sources which cause no depletion in the general funds, *Holland* v. *Grafton* (1937), 24 Ohio Law Abs. 642. However, in the instant matter, there has been no evidence that funds utilized for the payment of solicitor or tax commissioner would come from any other fund than the general fund so that this exception does not apply. A certificate further was not required for the authorization of payment of either elected or appointed public officers, *Youngstown* v. *First Natl. Bank* (1922), 106 Ohio St. 563, 140 N.E. 176. A tax commissioner as provided for by R.C. 733.85 is specifically alluded to as an officer or public officer and certainly meets the definition of an individual who has been appointed in a manner prescribed by law, has a designation or title given him by law,

and exercises functions of government concerning the public, assigned to him by law, *State, ex rel.,* v. *Brennan* (1892), 49 Ohio St. 33, 29 N.E. 593. However, the *Youngstown* case is interpreted as an exception to G.C. 3806. Since that time, of course, R.C. 5705.41 has through the legislature specifically provided for the exception of contracts involving *current* (emphasis added) payrolls of regular employees and officers. Certainly, at the time of the making of the contract, Tekulve was not the current officer but rather an officer to act *in futuro.* "Current" as used in "current expenses" under R.C. 5705.01, means the lawful expenditures of a subdivision. To be lawful under R.C. 5705.41(A) provides that the village of Moscow shall not make any appropriations of money except as provided under R.C. Chapter 5705. See, also, *Atwood* v. *Judge* (1977), 63 Ohio App. 2d 94, 17 O.O. 3d 289, 409 N.E. 2d 1022. Total appropriations from each fund shall not exceed the total of the estimated revenue available for expenditures therefrom, as certified by the budget commission. R.C. 5705.39. R.C. 5705.36 provides that the total appropriations made during a fiscal year from any funds shall not exceed the amount as set forth as available for expenditures from such fund and the official certificate of estimated resources or any amendment thereof. R.C. 5705.38 requires that the annual appropriations be separately classified for each office, department or division and within it the amounts appropriated for personal service. Testimony adduced indicated that there were no funds available not only for the solicitor's salary but for the appropriation of a tax commissioner's salary and that further the treasurer of the village was not requested to undertake to transfer funds among the various accounts to pay for the 1984 tax commissioner. Because the foregoing statutes were not followed under R.C. Chapter 5705, certainly the contract for

expenditures for the tax commissioner could not be considered current expenses or within the current payroll exclusion as provided under R.C. 5705.41 (D). Therefore, this court holds that based upon this particular fact situation, the tax commissioner was not receiving a current payroll which would exclude the requirement of fiscal certification.

The only other exception which would apply to both the solicitor and tax commissioner would be if the ordinances authorizing contracts were valid emergency ordinances under R.C. 731.30. R.C. 731.30 states that emergency ordinances or measures are "* * * necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, [and which] shall go into immediate effect.* * *"

While it is not clear that this emergency provision negates the requirement of R.C. 5705.41(D), nevertheless *Youngstown* v. *First Natl. Bank, supra,* has held this to be an exception to the predecessor of R.C. 5705.41 (G.C. 3806). Albeit this case, if narrowly interpreted, applied to hiring of police officers during times of riot or like emergencies, assuming *arguendo* that this case has a broader holding, it does create an emergency exception. The issue confronting this court then becomes whether or not the ordinances passed on December 23, 1983 were indeed valid emergency ordinances. Should either ordinance be found to be valid as an emergency provision, then the contracts as drawn on December 30, 1983, *if* otherwise valid and in full operation, would not be violative of the contract carryover prohibition of R.C. 731.48.

Various Ohio courts have addressed the issue of what constitutes a valid emergency ordinance and of when a court may properly review a municipal legislative authority's determination of what constitutes an emergency in passage of a given ordinance.

In *Youngstown* v. *Aiello* (1951), 156 Ohio St. 32, 45 O.O. 45, 100 N.E. 2d 62, the Supreme Court of Ohio determined that a legislative authority may enact emergency ordinances which are deemed to have immediate effect so long as the ordinance sets forth reasons for the emergency. If reasons are not given in the ordinance, it shall not be considered proper emergency legislation and shall not have immediate effect. The high court found that the body must "consider, determine and announce" the reason for the emergency. In *State, ex rel. Johns,* v. *Bruss* (1955), 99 Ohio App. 314, 59 O.O. 104, 133 N.E. 2d 139, the court of appeals, citing *Aiello, supra,* at 316-318, 59 O.O. at 106, 133 N.E. 2d at 141-142, found that a mere statement that an ordinance is necessary for the preservation of the peace, health, and safety of a community is not enough of an explanation of emergency to allow an emergency ordinance to stand. The court found that such a statement in an ordinance is merely a conclusion and does not meet the *Aiello* court's holding that a body must " 'consider, determine and announce' " the reason for an emergency. In *Bruss,* the court held that where an ordinance enacted on December 16, 1953, to take effect on January 1, 1954, reestablishing two police captaincies stated it was for the peace, health and safety of the community, the short delay in the effectiveness of the ordinance was incompatible with the concept of immediacy as contemplated by an emergency situation so that the enactment as an emergency was not valid.

In *State, ex rel. Lipovsky,* v. *Kizak* (1968), 15 Ohio St. 2d 27, 44 O.O. 2d 16, 238 N.E. 2d 777, the high court found that where a legislative authority in enacting a municipal income tax provision on December 12, 1967 to go into effect on the following January 1 stated that the ordinance was necessitated by inadequate fire and police protection for citizens, the delay was reasonable so

that the municipality could set up sufficient tax collection machinery. The reasons for the emergency were valid and properly outlined. The court found that the ordinance therefore was valid as emergency legislation. In *Walsh* v. *Cincinnati City Council* (1977), 54 Ohio App. 2d 107, 8 O.O. 3d 208, 375 N.E. 2d 811, the Hamilton County Court of Appeals held that a legislative authority has no authority to declare an ordinance to be an emergency measure for reasons which are obviously illusory or tautological. The court found that review by courts of a council's declaration of legislation as emergency is permitted only where the reasons given for its enactment are "obviously illusory or tautological." *Id.* at 111, 8 O.O. 3d at 211, 375 N.E. 2d at 814. The court, in reviewing an ordinance enacted as emergency legislation on February 24, 1977, providing for the changing of the name of the Cincinnati Riverfront Stadium effective January 1, 1978, found that the reasons set forth for the emergency for the "immediate preservation of the public peace, health, safety and welfare * * *" to be "tautological and a conclusion without a fundament." *Id.* at 112, 8 O.O. 3d at 211, 375 N.E. 2d at 815. The *Walsh* court cited the *Bruss* decision for the proposition that a mere statement that an ordinance is necessary for the preservation of public peace, health and safety is but a conclusion without reason. On this basis, the *Walsh* court found that the ordinance was invalid as emergency legislation. *Id.* Additionally, the *Walsh* court found the council's statement that the ordinance was immediately necessary to be illusory in that the ordinance itself provided for a ten-month delay in its effective date, and that the delay was not a reasonable

delay within the meaning of *Kizak, supra; Walsh* at 111-112, 8 O.O. 3d at 210-211, 375 N.E. 2d at 814.

With these decisions in mind, this court turns now to the question of whether the village of Moscow Ordinances Nos. 17-83 and 18-83 were properly enacted as emergency legislation, thereby rendering the contracts drawn therefrom valid and enforceable. This court finds that although the delay of effectiveness of the ordinances was a short time, December 23, 1983 to January 1, 1984, the reasons given in the ordinances for the existence of an emergency and the necessity of legislation were no more than simple conclusions upon the part of council and were, within the meaning of *Walsh,* obviously illusory and tautological.[2]

The statements that the ordinances were "deemed an emergency for the preservation of the public health and welfare of said village" do not meet the *Aiello* standard that the body "consider, determine and announce" the reason for the emergency, as interpreted by the *Bruss* court, and are, as set forth in the *Walsh* case, "conclusion[s] without a fundament." *Walsh, supra.* This court's analysis on this point stems from the fact that the statements in the ordinances that "outstanding public funds must be properly placed in the immediate future" also are illusory in that, as counsel for defendants points out, at the time of the enactment on December 23, 1983, no funds had been or could be appropriated for expenditure because the ordinances were enacted prior to adoption of annual appropriation measures pursuant to county certification under R.C. 5705.35 to 5705.36. The reason given as to why an immediate emergency existed, being invalid, leaves the

---

[2] Both ordinances state "Section Four: That this ordinance is deemed an emergency for the preservation of the public health and welfare of said Village, and that outstanding

public funds must be properly placed in the immediate future, and said Ordinance shall become effective upon its passage."

statements "deemed an emergency for the preservation of public health and welfare" standing alone and insufficient to sustain the ordinances as emergency legislation under *Bruss* and *Walsh*.

The above analysis leads this court to the conclusion that the ordinances were not proper emergency ordinances. Therefore, they do not meet the exception to the requirement of fiscal certificate of availability and the contracts based upon these ordinances are invalid. In addition, because these ordinances were not emergency ordinances and did not have immediate effect under R.C. 731.30 in the year 1983, they took effect under R.C. 731.29 in the year 1984, the term of the new village council, so that the contracts drawn pursuant to the ordinances would violate the carry-over provision of R.C. 731.48.

In addition to the legal requirements for the validity of an ordinance and contract as discussed above, R.C. 731.20 places requirements as to ordinances and R.C. 731.14 sets forth further requirements for contracts, both requiring them to be signed by the clerk and the mayor. R.C. 731.20 states:

"Ordinances, resolutions, and by-laws shall be authenticated by the signature of the presiding officer and clerk of the legislative authority of the municipal corporation. Ordinances of a general nature or providing for improvements shall be published as provided by sections 731.21 and 731.22 of the Revised Code before going into operation. No ordinance shall take effect until the expiration of ten days after the first publication of such notice. As soon as a bylaw, resolution, or ordinance is passed and signed, it shall be recorded by the clerk in a book furnished by the legislative authority for that purpose."

R.C. 731.14 states in part:

"All contracts made by the legislative authority of a village shall be executed in the name of the village and signed on its behalf by the mayor and clerk.* * *"

Counsel for plaintiff concedes that the ordinances were not signed and authenticated under R.C. 731.20. However, he argues that the holding of *Blanchard* v. *Bissel* (1860), 11 Ohio St. 96 controls. The Supreme Court held that the omission of the presiding officer of council to sign an ordinance does not make invalid the ordinance that has otherwise been duly enacted. In reviewing this case, this action was brought by the Treasurer of Lucas County to overturn an annexation which had been voted by council to be placed before the electors by way of referendum. This council ordinance was never signed by the presiding officer of the council. Numerous hearings had been held before not only the council, but the county commissioners concerning the issues of annexation. Pursuant to the council's ordinance, the matter was put on the ballot and an election was held.

The court at 101-102 held:

"* * * But if, as the plaintiff below avers in his petition, this ordinance was, in fact, regularly passed by the council and recorded among their proceedings by the proper officer, we would be unwilling to hold that the omission of the presiding officer to attach to it his signature, would render the election held pursuant to its provisions wholly void. Its vitality depends, as we think, upon the fact that it was regularly passed by the council, and this fact may be shown by the record. But be that as it may, the objection should have been taken, if at all, upon the hearing in the proceedings for annexation.* * * The facts may be such as would justify a reviewing court in setting it aside, but collaterally it can not be impeached or treated as a nullity. And full opportunity for a review is given by the statute, which provides that the order of annexation shall not take effect for two months after it is made; within which time any person interested, or the prosecuting attorney of the county, may file a complaint, in the nature of an application for an injunction, in the court

of common pleas of the county, or with a judge in vacation, by whom the whole matter may be again summarily and fully heard. * * * In this case, no such complaint was made; no review was asked; and the order of annexation, after two months from its date, became conclusive and binding upon all parties interested, unless it be shown to be absolutely void, for want of jurisdiction.* * *"

A close reading of the rationale of this case indicates that the Supreme Court had before it a complaint for injunction filed by the treasurer after the ordinance had gone into effect. Persons had relied upon the order and an election had been held in reliance upon the ordinance being procured under color of law and after chance of review of its merits. Collateral attack was not the proper remedy. As indicated in the above decision, had a suit been filed immediately upon the resolution the court may have made a different holding. In the case at hand, this matter has been brought to issue within two weeks from the passage of the ordinances, albeit the proponent of the ordinances has been the complaining party. Following the fact situation of the *Blanchard* case, if these had been ordinances which had not been considered emergency ordinances, had been passed and relied upon and this issue reached the court after a passage of considerable time, then the *Blanchard* case would have more bearing. Further, the *Blanchard* facts differ from the facts at hand in that there is no indication that *both* the treasurer or mayor failed to sign and no indication that the mayor or presiding officer intentionally refused to sign. Facts indicate that in the case at hand the mayor refused to sign due to his belief that the ordinances were invalid.

Assuming, *arguendo,* that the *Blanchard* case can be broadly construed to apply to the fact situation at hand, the failure of the mayor and clerk would not *per se* invalidate the ordinances. However, the failure to sign would still have

bearing as to *when* the ordinances would become effective or executed. This would carry over the ordinances into the 1984 year and would be contra R.C. 731.48. Again had the factual situation in the case at hand been different, *i.e.,* had this ordinance been passed in the middle of the term and acted upon during the term of the council which passed upon it, the failure of following R.C. 731.20 might possibly be considered not to invalidate the ordinance and the actions of council in following the directions of its then-appointed solicitor, Charles J. Tekulve, might be deemed ratification of council of a de facto solicitor. However, this is not the case and due to the specific factual pattern the prohibited carry-over provisions of R.C. 731.48 have been violated. See *Cleveland* v. *Coughlin* (C.P. 1914), 16 Ohio N.P. (N.S.) 468.

R.C. 731.14, which applies to the contracts, pursuant to the ordinances, requires that the contracts be executed by the mayor and clerk. The *Blanchard* case, cited above, of course did not discuss R.C. 731.14 but, assuming, *arguendo,* that it could be broadly interpreted through its rationale to apply to this section, again the same rationale determines *when* the contract would be executed. Here again, the contract, if deemed executed at all, would be executed in the new term of council contra the carry-over provisions of R.C. 731.48. Assuming, for the sake of argument, this contract could be ratified, the only period in which ratification could take place would be on January 1, 1984, the new term of the new council. Thus, even if there was *de facto* operation of the solicitor and tax commissioner under this contract, the contract would be violative of the carry-over provisions of R.C. 731.48. As analyzed above, if the contracts had been signed in mid-term of the council and acted upon, then this decision might be different.

Plaintiff further contends that it is not necessary to pass ordinances in

order to enter into a contract since ordinances are only necessary for the appropriation of money. The court notes that the ordinances as well as the contract specified and required payment and appropriation of money for payment of the services of the future tax commissioner and solicitor and so holds that these ordinances were for appropriation of money. However, assuming, *arguendo*, they were not, this only means that the court could consider the validity of the contracts and not the ordinances behind them. Based upon the rationale above, the contracts alone on their face violate the carry-over provisions of R.C. 731.48. Here, the contracts in their own language provided under each section four, term of contract, "this contract shall commence the first day of January, 1984, and end the 31st of December, 1985, both dates being inclusive."

The parties in executing the contract have set forth in their own contractual agreement the term of the contract and the fact that it did not go into full operation until the expiration of the old council on December 31, 1983 and the beginning of the new council on January 1, 1984. While full operation has been interpreted in *Jones* v. *Middletown, supra,* as discussed above, nonetheless it appears that the parties clearly intended full operation to go into effect on January 1, that is, assuming that the execution of contract test is not the determination of full operation and assuming that the signatures of the mayor and clerk are not needed, the parties to the contract have expressly determined the definition of full operation and when the contracts were to take place. See *Browne* v. *Ripley* (1940), 67 Ohio App. 112, 21 O.O. 127, 36 N.E. 2d 50.

Therefore, based on all of the above, this court finds and so holds that the ordinances and contracts relying upon those ordinances have not been passed or put into effect properly according to the requirements of the Ohio Revised Code and that they are not proper emergency legislation waiving any of those legal requirements. Therefore, Tekulve is not the legally appointed solicitor or tax commissioner of Moscow and has no standing de jure, or legally, to bring this injunctive action.

However, it can be argued that Tekulve is de facto the village solicitor and by his acceptance as village solicitor and his actions under color of law he still has standing to seek this injunctive relief. The Ohio Supreme Court in *State, ex rel. Witten,* v. *Ferguson* (1947), 148 Ohio St. 702, 36 O.O. 285, 76 N.E. 2d 886 (cited in 44 Ohio Jurisprudence 2d [1960], Public Officers, Section 198, at 699) defined what criteria must be met in order for an official to be considered "de facto." *Witten* dealt with de facto public officers. While a village solicitor may not be deemed to be a public officer, as he acts at the direction of and under the supervision of village council and does not initiate sovereign actions on his own, nonetheless, *Witten* is persuasively authoritative and illuminating upon the issue of the quality of being "de facto" as to a village solicitor.

The *Witten* court found that one is a de facto official if he has the reputation of being the official he purports to be and is accepted as such by those who deal with him. He is a de facto official if his duties are exercised without appointment, but in such a manner that the public is induced to suppose him to be who he purports to be, or if he is under color of appointment but has omitted to conform to a precedent such as giving a bond or oath, or if he is under color of appointment but it is void for his ineligibility or defect. The *Witten* court determined that one's reputation may be based upon mere performance of official duties for a sufficient length of time so as to imply an appointment. *Id.* at 709, 36 O.O. at 288-289, 76 N.E. 2d at 890-891, quoting 43 American Jurispru-

dence (1942), Public Officers, Section 478, at 232. The court further noted that a de facto official shall have been in actual possession of the office in addition to having the reputation for being who he purports to be. See, also, 63A American Jurisprudence 2d (1984), Public Officers and Employees, Section 578 *et seq.*; and 15 Ohio Jurisprudence 3d (1979), Civil Servants, Section 305 *et seq.*

Under the Ohio definition given in *Witten* as to what constitutes a de facto official, this court cannot say certainly that Charles J. Tekulve is the de facto solicitor of Moscow, so that he has standing on an R.C. 733.56 injunctive action. Tekulve cannot be said to have the reputation for being the solicitor and to be accepted as such by those dealing with him. Essentially, his non-acceptance is the *"raison d'etre"* of this lawsuit. Further, any reputation Tekulve may have as being solicitor cannot be said to be based upon an "implied appointment" by his discharge of duties for a "sufficient" length of time, insofar as his service to date comprises a mere two weeks. Additionally, it cannot be said that Tekulve has engaged in any faithful discharge of duties in the solicitor capacity which go beyond the initiation of this lawsuit.

Believing that Tekulve is not in the position of being the de facto solicitor of Moscow, this court cannot say certainly that he has standing on his request for R.C. 733.56 injunctive relief. At best, if Tekulve feels that he has been wronged or would be wronged by the passage of proposed ordinances terminating his employment as tax commissioner and village solicitor, his possible remedy would be one of damages rather than injunction against the council.

However, assuming *arguendo* that Tekulve has standing to bring this injunctive action and complaint for declaratory judgment, does this court have jurisdiction to honor Tekulve's request

and prayer that the mayor and village clerk be ordered to sign the ordinances and/or contracts? It is noted that the complaint is styled "Complaint for Declaratory Judgment" and is filed pursuant to R.C. Chapter 2721, the declaratory judgments statute. Nowhere in that statute or under declaratory judgment does the court have the right to compel the actions of a public officer. At best, this remedy would lie in an action in mandamus to compel performance of a ministerial duty. Perhaps if the demand were properly framed in mandamus, this court's determination might be otherwise. However, mandamus has been held not to lie against a municipal official to compel issuance of a certificate of availability of funds to validate an otherwise void contract. *State, ex rel. Welker,* v. *Hart* (App. 1935), 20 Ohio Law Abs. 621. Based upon the above, this court doubts that even if this action were properly brought in mandamus, it would have the authority to order the mayor and clerk to sign these contracts, considering the fact that these contracts are otherwise invalid as previously discussed.

Finally assuming, again *arguendo*, that Tekulve has proper standing to bring this injunctive relief, this court has reviewed R.C. 731.10 which provides that: "* * *[t]he legislative authority may provide such employees for the village as it determines, and such employees may be removed at any regular meeting by a majority of the members elected to such legislative authority * * *." Based upon the above Revised Code section this court is hard pressed to prevent or otherwise enjoin the new village council, based upon a vote of the majority, from removing its solicitor, an employee of the village. Further, R.C. 733.85(B) authorizes council to "provide, by ordinance or resolution, the method of appointing and removing an officer who shall be responsible for the collection, deposit to the municipal

treasury of municipal income taxes * * *." Again, this court would be hard pressed to prohibit village council by a majority vote from terminating its tax commissioner and rehiring a new one. Again, if the terminated tax commissioner or village solicitor feels that the council has breached a contract and damaged him in some respect, then his action would be one of damages rather than court interference by injunction. However, this court decision specifically does not refer to the validity or invalidity of any cause of action that Tekulve might have by way of damages.

Finally, plaintiff argues that to permit council to pass new ordinances which would terminate or change the prior ordinances and prior contracts entered into between past council and Tekulve as village solicitor and tax commissioner is retroactive legislation which impairs contracts and disturbs his "vested rights." The legislature, in this case, village council, can by remedial retrospective statutes, assuming *arguendo*, that these new ordinances would be retrospective, render valid that which might have been authorized in the first instance by proper enactments. See Section 28, Article II, Ohio Constitution, and *Goshorn* v. *Purcell* (1860), 11 Ohio St. 641. If the ordinances, as this court has so held, are indeed invalid and improperly passed, then certainly the council is empowered to remedy the past mistakes or defects of prior council. The legal maxim that neither man nor state has a vested right to do wrong applies in this case. See *Goshorn* v. *Purcell, supra.* The United States Constitution declares that citizens of each state shall be entitled to all privileges and immunities of citizens in the several states, United States Constitution, Section 2, Article IV. The privileges and immunities protected by the Fourteenth Amendment to the United States Constitution against abridgment by state law do not include the right of an employee of a municipal government to hold employment. *Green* v. *State Civil Service Comm.* (1914), 90 Ohio St. 252, 107 N.E. 531. Normally, a vested right is determined to be substantially a property right. *Scamman* v. *Scamman* (C.P. 1950), 56 Ohio Law Abs. 272, 90 N.E. 2d 617. To be vested, a right must be *complete* and consummated. *Scamman, supra.* A right cannot be regarded as vested in the constitutional sense unless it amounts to something more than a mere expectation of future benefit or interest. *Moore* v. *Bur. of Unemp. Comp.* (1973), 73 Ohio App. 362, 29 O.O. 75, 56 N.E. 2d 520. Perhaps the leading case indicating that the state cannot deprive one of property vested upon a contract is *State, ex rel. Krichbaum,* v. *Northern Ohio Traction & Light Co.* (1913), 2 Ohio App. 113. There, a railroad had been granted an open-end contract by the legislature to transport passengers. However, after several of years of operation pursuant to a legitimate grant, the railroad proceeded to raise its rates. The county commissioners through the prosecuting attorney moved to cancel the contract. The court held that this would be an impairment of vested contract rights. However, again the facts in that case differ from the case at hand. Here, Tekulve, as discussed above, was neither legally nor de facto a solicitor or tax commissioner. He has performed no duties except that of filing this suit. Had he been in office or under employment for some time the issue might be resolved differently. Further, prohibition against impairment of contract is a double-edge sword. The powers of the legislature likewise cannot be limited or abridged by contract to any person. Certainly, a village council could not be permitted to force its successor council (irrespective of R.C. 731.48) to deal with a particular person as its legal adviser against the wishes of the majority of council. Certainly, a legal adviser to a corporation as an attorney to a client,

has or should have a relationship of trust and preference.

The court will not pass upon the validity of the proposed ordinances Nos. 1-84, 2-84, 3-84 and 4-84 in that they have not yet been passed and are certainly at best executory. To pass upon the validity of these ordinances before they are executed would be to render advisory opinions. A declaratory judgment which is requested in this complaint is distinguished from an advisory opinion in that a declaratory judgment is a binding adjudication of the contested rights of litigants, whereas an advisory opinion is merely the opinion of a judge of a court which adjudicates nothing and is binding on no one. *State, ex rel. Draper,* v. *Wilder* (1945), 145 Ohio St. 447, 31 O.O. 63, 62 N.E. 2d 156.

Therefore, it is the holding and order of this court that Ordinances Nos. 17-83 and 18-83 are invalid, non-emergency ordinances and prohibited by the contract carry-over provision in R.C. 731.48;

That the contracts drawn in reliance of the ordinances are invalid for the same reasons set forth;

That this court lacks authority to order a village mayor and clerk to sign contracts which are otherwise invalid;

That plaintiff Charles J. Tekulve lacks standing to file for injunctive relief under R.C. 733.56;

That the temporary injunction placed against defendants be and hereby is dissolved and no permanent injunction issued in its place, thereby permitting village council to resolve the issue of selection of a tax commissioner and village solicitor per its majority rule. The hearing date of January 18, 1983, is hereby vacated since the motion to expedite and this decision have resolved the issues to be heard on that date.

Defendants to prepare entry accordingly. Exceptions noted to plaintiff.