[Cite as *State v. Woolf*, 2016-Ohio-3251.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2015CA00195 |
| WILLIAM LEE WOOLF | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                              Court of Common Pleas, Case No. 2015-
                              CR-0618

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       May 31, 2016

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN D. FERRERO                       AARON KOVALCHIK
STARK COUNTY PROSECUTOR               116 Cleveland Avenue N.W.
BY: RONALD MARK CALDWELL              808 Courtyard Centre
110 Central Plaza South, Ste. 510     Canton, OH  44702
Canton, OH  44702

*Gwin, P.J.*

{¶1} Appellant, William Woolf ["Woolf"] appeals the September 10, 2015 judgment of the Stark County Court of Common Pleas, Stark County, Ohio overruling his motion to suppress.

### Facts and Procedural History

{¶2} In 2015, Woolf, was charged by indictment with one count each of failure to comply [R.C. 2921.331(B) and (C)(5)(a)(ii)] and operating a vehicle while under the influence ("OVI") [R.C. 4511.19(A)(1)(a), (d), or (e)]. During the pretrial stage of this prosecution, Woolf filed a suppression motion, making two main arguments. First, he could not be convicted of the failure to comply since the pursuing officer did not have a valid operator's license at the time of the pursuit. And second, that the seizure was illegal because the officer used excessive force and inappropriate language while effecting the stop of Woolf.

{¶3} The trial court requested a stipulated statement of facts, which was provided by the parties. ["Court's Exhibit 1"]. After considering this stipulation of facts, the trial court overruled the motion. The court concluded that these facts did not establish a violation of Woolf s rights against unreasonable searches and seizures. Specifically,

> The defendant asserts that because the Officer making the arrest was in violation of the Rules and Regulations of the Alliance Police Department by not having a valid driver's license, and further because the Officer used abusive language and unnecessary and excessive force during the course of the arrest, that said failures and actions on the part of the police Officer invalidated the arrest and should result in a suppression of

any and all evidence seized, collected, observed, photographed or recorded as a result of the search, seizure and interrogation conducted on or about April 12, 2015.

While the conduct of the police Officer in failing to have a driver's license and the allegation of excessive force are matters to be considered by the Alliance Police Department and if true, the subject of possible disciplinary action or a civil action by the defendant, the same do not render invalid the actions of the Officer who was under the color of authority.

Transcript of Proceedings, Pretrial Hearing Sept. 9, 2015 at 4-5.

{¶4} After this suppression ruling, Woolf opted to plead no contest and to appeal the ruling instead of standing trial. At this hearing, the trial court had the prosecution read into the record the bill of particulars, without objection, upon which the court made its factual basis for its finding of guilt. With regard to the willfully fleeing charge, this recitation provided the following:

[Woolf] was operating a motorcycle in the area of West Ely Street and Buckeye Avenue in Alliance, Stark County, Ohio, when Alliance Police Department attempted to stop him for driving under suspension and/or fictitious plates.

The officer activated lights and/or sirens.

Defendant refused to stop and accelerated [,] reaching speeds of over 100 miles per hour.

Defendant eventually drove through a yard and was thrown from the motorcycle due to hitting a mud puddle hole.  There were several people in the yard when this occurred.

This also occurred in a residential area with a posted 25 mile per hour speed limit.

Transcript of Plea & Sentence, Sept. 23, 2015 at 9-10.  Regarding the OVI charge, the recited bill of particulars provided,

Defendant had a strong odor of alcohol coming from his person and red glassy eyes.  He urinated on himself in the police cruiser.

He provided a breath sample of .084 percent and a urine sample of .12 percent.

Transcript of Plea & Sentence, Sept. 23, 2015 at 10.

{¶5}    After accepting Woolf s plea and convicting him, the trial court sentenced him to an aggregate prison term of nine months on the failure to comply charge and a concurrent 180-day jail sentence for the OVI conviction.

*Assignments of Error*

{¶6}    Woolf raises two assignments of error,

{¶7}    "I. APPELLANT'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1 SECTION 14 OF THE OHIO CONSTITUTION WERE VIOLATED WHEN THE TRIAL COURT OVERRULED THE MOTION TO SUPPRESS.

**{¶8}** "II. THE TRIAL COURT ERRED BY NOT CONSIDERING THE USE OF EXCESSIVE FORCE BY LAW ENFORCEMENT AS A FACTOR IN APPELLANT'S MOTION TO SUPPRESS."

I.

**{¶9}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, *supra*. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

{¶10}  In his first assignment of error, Woolf challenges the trial court's suppression ruling, arguing that the court erred in finding that Officer McCord's lack of a valid driver's license did not vitiate the legality of his traffic stop of Woolf.  According to Woolf, McCord could not make a legal stop since was not permitted to drive.

{¶11}  In *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89(1996) the United States Supreme Court held:

> The temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective.

*Whren* at 1771.  Less than one month later, the Ohio Supreme Court reached a similar decision in *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091(1996).  In *Erickson*, the Court stated:

> Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.

Id. at syllabus.

{¶12}   In *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204,  the defendant argued that his actions in the case – twice driving across the white edge line – were not enough to constitute a violation of the driving within marked lanes statute, R.C.

4511.33. Id. at ¶ 15. The appellant further argued that the stop was unjustified because there was no reason to suspect that he had failed to first ascertain that leaving the lane could be done safely or that he had not stayed within his lane "as nearly as [was] practicable," within the meaning of R.C. 4511.33(A)(1). In rejecting these arguments, the Supreme Court noted, "the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id. at ¶ 17.

{¶13} In the case at bar, there is no evidence that Woolf knew that Officer McCord did not have a valid driver license when he signaled Woolf to pull over. Woolf has not challenged the officer's reasons for attempting the traffic stop. Accordingly, the fact that Officer McCord had probable cause to stop Woolf is unchallenged.

{¶14} We note that Officer McCord was in uniform in a marker police vehicle. Officer McCord did not cease to be a police officer simply because he was without a driver license. No official action, nor any type of disciplinary action of any kind had been commenced against the officer before the traffic stop.

{¶15} "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Brigham City v. Stuart, 547 U.S. at 403, 405-406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), quoting Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 209 (1978). *Accord, State v. Dunn*, 131 Ohio St.3d 325, 2012–Ohio–1008, 964 N.E.2d 1037, syllabus.

**{¶16}** In the case at bar, Officer McCord was duly hired and serving as a police officer for the City of Alliance. The fact that he subsequently lost his driver license may or may not affect his employment. However, on the date in question, Officer McCord was acting under color of law of a known and valid appointment. He simply failed to comply with a precedent or requirement that he have or maintain a valid driver license. He would be considered, therefore, a de facto officer who had the authority to make traffic stops. *Cf. State ex rel. Witten v. Ferguson*, 148 Ohio St. 702, 76 N.E.2d 886. As this Court has noted,

> "[W]here an officer holds the office and performs the duties thereof with the acquiescence of the public authorities and the public and has the reputation of being the officer he assumes to be and is dealt with as such, he is, in the eyes of the law, a de facto officer." *State ex rel. Witten v. Ferguson,* 148 Ohio St. 702, 710, 76 N.E.2d 886 (1947). "The law validates the acts of de facto officers as to the public and third persons on the ground that, although not officers de jure, they are, in virtue of the particular circumstances, officers in fact whose acts public policy requires should be considered valid." *State, ex rel. Paul, v. Russell*, 162 Ohio St. 254, 257, 122 N.E.2d 780 (1954).

*Swanson v. Maier,* 5th Dist. Stark No. 2014CA00208, 2015-Ohio-2141, ¶27.

**{¶17}** Accordingly, the fact that Officer McCord did not have a valid driver license did not convert and otherwise valid traffic stop into an illegal stop and detention.

**{¶18}** Woolf's first assignment of error is overruled.

II.

{¶19} Woolf s second assignment of error challenges the trial court's suppression ruling for not considering the excessive force and language used after the traffic stop.

{¶20} Contrary to Woolf s representation, the trial court did consider the alleged excessive force and inappropriate language that was proffered by the defense. The court specifically noted in its judgment entry ruling on the suppression motion,

> THE COURT: All right. That proffer is made for purposes of the record.
>
> Obviously denied by the state.
>
> But it is proffered to be considered relative to the motion to dismiss along with the stipulated statement of facts.

Transcript of Proceedings, Pretrial Hearing Sept. 9, 2015 at 7.

{¶21} And the trial court's specific suppression ruling considered the allegations of excessive force,

> Additionally, the defendant proffered an allegation that the Officer in question used excessive force and inappropriate language in violation of the Alliance Police Department Rules and Regulations at the time of arrest of the defendant. The Court, for purposes of this motion only, takes said allegations into consideration.

Judgement Entry, filed Sept. 10, 2015 at 1.

{¶22} Accordingly, the record does not support that the trial court committed the error as alleged in Wolfe's second assignment of error.

{¶23} Woolf's second assignment of error is overruled.

{¶24}  The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, J., concur